Cynthia J. PETRUSKA, as administratrix of the estate of John R. Petruska and in her own behalf

v.

JOHNS–MANVILLE et al.

Johns-Manville Products Corporation

and

Canadian Johns-Manville Asbestos, Ltd.

Civ. A. No. 77–3341.

United States District Court, E. D. Pennsylvania.

April 30, 1979.

---

See also, D.C., 83 F.R.D. 39.

Edward Rubin, Hamburg, Rubin, Mullin & Maxwell, Lansdale, Pa., for plaintiff.

Francis E. Marshall, Marshall, Dennehey & Warner, Thomas C. DeLorenzo, Philadelphia, Pa., for defendants.

## OPINION

POLLAK, District Judge.

This diversity action was commenced in 1977 to recover damages for asbestos poisoning. The complaint puts forward two novel theories of liability. First, it seeks to impose liability on defendant Johns-Manville Products Corporation (hereinafter "Products") for asbestos-related diseases—mesothelioma and asbestosis—contracted by plaintiff's decedent John R. Petruska as a result of his residency in a town in which Products operated an asbestos-using plant. Second, it seeks to impose liability on defendant Canadian Johns-Manville Company, Ltd., (hereafter "Canadian") for distributing to Products asbestos "which [it] knew . . . or should have known [was] deleterious, poisonous and highly harmful to plaintiff-decedent's body, lungs, respiratory system, skin and health."

The case is now before the Court on plaintiff's motion to compel defendants to produce the following documents: (1) records of medical examinations of its employees made by defendant, Canadian, during the period 1920–1960; (2) records of occupational disease and workmen's compensation claims filed by employees of Canadian claiming asbestos-related health problems from 1920–1960; (3) copies of all minutes of the Quebec Asbestos Mining Association in the possession of Canadian; and (4) a copy of any list of mesothelioma cases for employees of Canadian. Plaintiff proposes that inspection take place at the Philadelphia office of defendants' counsel, with the understanding that plaintiff will reimburse defendants for all photocopying expense. Defendants argue that the proposed discovery is tardy, and that in any event production of the requested documents would (1) contravene Quebec law, and (2) as to some of the documents, be a "breach of privilege."

1. Defendants contend that plaintiff's demand is out of time, arguing that the Court's extension of the discovery deadline to February 1, 1979, was merely to facilitate completion of outstanding discovery, not to permit new discovery. The Court's order was not so limited.

2. Defendants argue that the documents concerning Canadian employees are not relevant to this case since John Petruska is not claiming a work-related impairment. But evidence concerning defendants' knowledge of the danger to their employees is probative of their knowledge of the danger, if any, to residents of communities in which they operate plants. In *Karjala v. Johns-Manville Products Corp.,* 523 F.2d 155, 158 (8th Cir. 1975), the Court of Appeals approved a jury charge which read in part:

It is admitted that Johns-Manville knew as early as 1942 that asbestos would cause asbestosis when inhaled by factory workers. Mr. Karjala, however, is not a factory worker. He is an insulation installer. It is for you to decide whether or not Johns-Manville knew in fact of the

danger to Mr. Karjala of contracting asbestosis . . . In reaching your decision you may consider the knowledge which Johns-Manville had relative to factory workers and whether or not this knowledge would put Johns-Manville on notice of the danger to Mr. Karjala as an installation worker.

Therefore, the requested documents appear relevant within the meaning of Rule 401 of the Federal Rules of Evidence and also within the meaning of Rule 26(b)(1) of the Federal Rules of Discovery.

■■■ 3. Defendants argue that all medical records are privileged. Since this is a diversity action, this Pennsylvania federal court must follow the privilege law which would be applied if this case had been brought in a state court. Federal Rule of Evidence 501.[1] And this means that if the state court would apply the privilege law of another jurisdiction, the federal court must follow suit. Cf. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The Pennsylvania Supreme Court's adoption, in *Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 203 A.2d 796 (1964), of a modern approach to choice of law suggests that a Pennsylvania state court would look to the privilege law of Quebec where the doctor-patient relationships between Canadian's employees and Canadian's physicians arose. See *Panko v. Consolidated Mutual Insurance Company,* 423 F.2d 41, 43 (3d Cir. 1970). Defendants, who have the burden of proving a privilege, have not cited any Quebec statute or case

law setting forth the protection claimed. The Court's research—which can make no claim to being exhaustive, but it is all the law which is available to us—suggests that Quebec follows the common law rule that communications entrusted to a medical advisor are not privileged. *Regina v. Potvin* (1971) 16 C.R.N.S. 233 (Quebec Court of Appeal) (criminal case). See also *Regina v. Burgess* (1974) 4 W.W.R. 310 (British Columbia).[2] Defendants may wish to redact patient names to insure confidentiality; plaintiff has advised the Court that such limited redaction is acceptable.

■■■ 4. Defendants argue that Quebec Asbestos Mining Association records can be secured directly from the Association. But it is "not usually a ground for objection that the information is equally available to the interrogator or is a matter of public record." 8 *Wright and Miller, Federal Practice and Procedure, Civil* § 2014 at 111. Here, plaintiff may have difficulty obtaining records from a foreign association, and the records sought are only those in defendants' possession.

5. Defendants' final argument against the proposed discovery is the most sweeping: because the demanded documents "are Canadian records of Canadian concerns," they "are therefore governed by Chapter 278 [of the Business Concerns Records Act of the Province of Quebec] and cannot be released to plaintiff or plaintiff's counsel." Article 2 of the cited Quebec statute provides in pertinent part:

> State or political subdivision thereof shall be determined in accordance with State law.

---

1. Rule 501. General Rule

   Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government,

2. It appears likely that if a Pennsylvania state court were to apply Pennsylvania's law of privilege, the information requested would not be protected. 28 P.S. § 328 provides:

   > No person authorized to practice physics or surgery shall be allowed, in any civil case, to disclose any information which he acquired in attending the patient in a professional capacity, and which was necessary to enable him to act in that capacity, which shall tend to blacken the character of the patient, without consent of said patient, ex-

. . . nul ne peut, à la suite ou en vertu d'une réquisition émanant d'une autorité legislative, judiciaire ou administrative extérieure à la province, transporter ou faire transporter, ou envoyer ou faire envoyer, d'un endroit quelconque dans la province à un endroit situé hors ·de celle-ci, aucun document ou résumé ou sommaire d'un document relatif à une entreprise.[3]

■ If, as defendants seem to fear, compliance with plaintiff's demand for the production of documents might contravene the quoted Quebec statute, it would appear nonetheless that a court in this country would have power to direct such compliance by a Canadian corporation properly subject to the court's jurisdiction. See *American Industrial Contracting, Inc. v. Johns-Manville Corp.,* 1971 Federal Trade Cases p. 73,599 (W.D.Pa.1971). Nevertheless, it would hardly seem prudent for a court to exercise its power in a fashion disruptive of the public policy of another country (or political subdivision thereof) unless it was apparent that no less intrusive measure would serve the compelling litigation needs of the forum. But in this instance it is not at all clear that compliance with plaintiff's demand would contravene the Quebec statute: *First*: there is no indication that the statute would be offended if defendants were to make copies of the requested documents and submit those, with a sufficient showing of authenticity, to plaintiff's counsel in Philadelphia. *Second*: Defendants' professed anxiety about the jeopardy which compliance would entail—"A violation of the statute is punishable by one year's imprisonment"—seems, at least on the present record, somewhat far-fetched. Article 4 of

the statute empowers the "procureur général," when advised of the imminent likelihood that corporate records will be shipped out of the province in violation of the statute, to ask a local judge to enjoin any such shipment of records. And Article 5 provides, in relevant part:

Toute personne qui, après avoir recu un avis d'une requête adressée à un juge de district en vertu de l'article 4, contrevient aux dispositions de l'article 2, est coupable de mépris de cour et passible d'un an d'emprisonnement.

However, there is no suggestion that the "procureur général" has filed "une requete adressée à un juge de district en vertu de l'article 4," with respect to the documents sought by plaintiff in this case.

■ All this said, it remains the general rule that business records should be examined at the place where they are kept, at least where the documents requested are large in number and their production poses some inconvenience. 8 *Wright & Miller* § 2214 at 651–52. Accordingly, while defendants are obligated to make the requested documents available, they may prefer to do this in Quebec rather than in Philadelphia. If Quebec is chosen, it would seem equitable for defendants to shoulder one-half of plaintiff's counsel's travel and associated expenses. See *Powell v. International Foodservice Systems, Inc.,* 52 F.R.D. 205 (D.P.R.1971); *Terry v. Modern Woodmen of America,* 57 F.R.D. 141 (W.D.Mo.1972).

As noted above, the existing order set February 1, 1979, as the deadline for completion of discovery. In view of the time consumed in resolving this issue, the closing date for discovery which is now outstanding is moved forward to June 15, 1979.

---

cept in civil cases, brought by such patient, for damages on account of personal injuries.

**3.** The full text of the statute in French and English is set forth in the Appendix to this Opinion.