Pearl G. LYONS, Executrix of the Estate of Leroy E. Lyons, Deceased, Plaintiff,

v.

BELL ASBESTOS MINES, LTD., et al., Defendants.

John W. CUMMINGS and Louise K. Cummings, Plaintiffs,

v.

BELL ASBESTOS MINES, LTD., et al., Defendants.

Roberta C. TURNER, Administratrix C.T.A. of the Estate of William Turner, Deceased, Plaintiff,

v.

BELL ASBESTOS MINES, LTD., et al., Defendants.

Civ. A. Nos. 86–623, 86–176, 85–1308 and 85–1309.

United States District Court, D. South Carolina, Columbia Division.

Feb. 22, 1988.

Terry E. Richardson, Jr., David L. Lyle, Jr., Barnwell, S.C., for plaintiffs.

Ernest J. Nauful, Jr., David L. Morrison, Columbia, S.C., for defendant, Asten–Hill.

R. Bruce Shaw, David G. Traylor, Jr., Columbia, S.C., for defendant, Turner–Newell.

Timothy W. Bouch, Charleston, S.C., for defendant, Raymark Industries, Inc.

William S. Davies, Jr., Columbia, S.C., for defendants, Asbestos Corp., Ltd. and Bell Asbestos Mines, Ltd.

Coming B. Gibbs, Allan R. Holmes, Charleston, S.C., for defendant, Cassiar Min. Corp.

## ORDER

JOE F. ANDERSON, Jr., District Judge.

This matter is before the court upon plaintiffs' motions to compel dated October 14, 1986, which seek an order requiring defendant Asten–Hill, Inc. (hereinafter "Asten–Hill") to fully and completely respond to plaintiffs' discovery requests pursuant to *Fed.R.Civ.P.* 37(a). Stated briefly, defendant Asten–Hill has objected to these discovery requests, arguing that the law of its domicile, specifically the Quebec Business Concerns Records Act (hereinafter "QBCRA"),[1] "forbids the production of business records or the disclosure of certain information that may be contained in its records." Def.Supp.Resp. to Pl.Interrog. at 2. Conversely, plaintiffs contend

---

1. Que.Rev.Stat. ch. 278 (1964).

that a foreign blocking statute or nondisclosure law such as the QBCRA neither diminishes the duty of a foreign defendant to respond to discovery requests under *Fed.R.Civ.P.* 33(a) and 34(a) nor limits the power of this court to compel discovery under Rule 37. *E.g., Societe Internationale v. Rogers,* 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958).

In their complaints,[2] plaintiffs allege that they were injuriously exposed to asbestos-containing products manufactured and distributed by defendant Asten–Hill during the course of their employment at a manufacturing facility in Walterboro, South Carolina. *See* Complaint ¶¶ 3–4 at 2. On March 3, 1986, defendant Asten–Hill filed a motion to dismiss for lack of *in personam* jurisdiction pursuant to *Fed.R.Civ.P.* 12(b)(2), asserting that it was not subject to personal jurisdiction under the South Carolina "long-arm" statute, S.C.Code Ann. § 36–2–803 (1976). Plaintiffs subsequently submitted jurisdictional and substantive discovery requests to defendant dated April 18, 1986, which consisted of both interrogatories under *Fed.R.Civ.P.* 33 and requests for production under Rule 34.

Defendant's initial responses to these discovery requests, dated September 16, 1986, stated that it was incorporated under the laws of the Province of Quebec and was therefore

> subject to the Quebec Business Concerns Records Act, which forbids the production of business records or the disclosure of certain information that may be contained in its records. To the extent that this discovery request seeks information or documents which would cause Asten–Hill, Inc. to violate the provisions of the Act, Asten–Hill, Inc. objects to this discovery request and declines to supply such information or documents.

Def.Resp. to Pl.Requests for Prod. at 1. On October 14, 1986, plaintiffs moved to compel responses to these discovery requests under *Fed.R.Civ.P.* 37(a).

On May 6, 1987, this court entered an order requiring defendant Asten–Hill to respond to plaintiffs' jurisdictional discovery requests. Shortly thereafter, on June 3, 1987, defendant submitted supplemental discovery responses which contained some additional jurisdictional information, but which again raised the provisions of the QBCRA. *See* Def.Supp.Resp. to Pl.Requests for Prod. at 1. In an order dated October 20, 1987, the court found defendant Asten–Hill subject to personal jurisdiction under S.C.Code Ann. § 36–2–803 (1976) and expressly authorized discovery on the merits. Order at 7–8.

Subsequent to this jurisdictional order, plaintiffs reasserted their motions to compel with respect to the various substantive discovery requests. On November 24, 1987, defendant Asten–Hill submitted a memorandum in opposition to these motions which contended that it "must rely on the Quebec Business Concerns Records Act and cannot voluntarily produce any other documents whatsoever." Def.Mem. in Resp. to Pl.Motion to Compel at 4. Thus, the issue before this court is whether the QBCRA relieves a foreign defendant over which *in personam* jurisdiction has been established of its duty to comply with the *Federal Rules of Civil Procedure.*

### *Scope and Effect of the QBCRA*

On its face, the QBCRA provides that no person shall, pursuant to or under any requirement issued by any legislative, judicial or administrative authority outside the Province, remove or cause to be removed, or send or cause to be sent, from any place in the Province to a place outside the Province, any document or resume or digest of any document relating to any concern.

Que.Rev.Stat. ch. 278, § 2 (1964). The statute empowers the provincial Attorney–General to apply for a court order precluding removal "[w]henever there is reason to believe that a requirement has been or is likely to be made for the removal or send-

---

ing out of the Province of a document relating to a concern...." *Id.* § 4. The statute also provides for criminal penalties for the violation of judicial orders issued pursuant to section 4. *Id.* § 5.

 As noted by another court confronted with discovery objections predicated on the QBCRA, "[t]he exact reason for the Quebec legislation is not clear." *American Industrial Contracting, Inc. v. Johns–Manville Corp.*, 326 F.Supp. 879, 880 (W.D.Pa.1971). "At first blush, it would seem its purpose is to require that a Quebec corporation keep its business records intact in the province." *Id.* Based on this construction, "it is not at all clear that compliance with plaintiffs' demand would contravene the Quebec statute." *Petruska v. Johns–Manville*, 83 F.R.D. 32, 36 (E.D.Pa.1979). "[T]here is no indication that the statute would be offended if defendants were to make copies of the requested documents and submit those, with a sufficient showing of authenticity, to plaintiff's counsel...." *Id.* The statute's proscription could likewise be avoided if defendant was to make the requested documents available in Quebec. *See* Def.Supp. Resp. to Pl.Requests for Prod. at 3 (Offering to produce certain documents in Quebec).

Additionally, there has been no showing that the QBCRA would be violated if defendant answered plaintiffs' interrogatories under oath without removing the documents themselves. "The interrogatories ... do not require the removal of any documents from the Province of Quebec...." *American Industrial, supra,* at 880. *Accord Wilder v. Amatex Corp.*, No. 82 CVS 953 (N.C.Super.Ct. Dec. 21, 1983). In *Wilder,* the court "reviewed the provisions of Chapter 278, Section 2 of the Laws of Quebec ... and ... determined that the answer of the Interrogatories propounded by Plaintiff does not require the removal of any documents, photocopies, or other records in violation of the aforesaid Law of Quebec...." *Wilder,* slip op. at 1.

Moreover, even assuming that plaintiffs' discovery requests here fall within the ambit of section 2 of the QBCRA, defendant has not alleged the pendency of an order precluding removal of the requested documents under section 4. "The statute is not self-enforcing but requires a petition by the Attorney–General ['procureur general'] to a district judge for an order requiring the documents not be sent out of the province." *American Industrial, supra,* at 880. As in *Petruska,* "there is no suggestion that the 'procureur général' has filed 'une requete adressée á un juge de district en vertu de l'article 4,' with respect to the documents sought by plaintiff in this case." *Petruska, supra,* at 36. Consequently, "[d]efendants' professed anxiety about the jeopardy which compliance would entail ... seems, at least on the present record, somewhat far-fetched." *Id.*

Thus, defendant has failed to make an adequate showing that the QBCRA is in fact applicable to plaintiffs' discovery requests in the instant case. Even assuming that the statute would preclude the transfer of original documents out of Quebec, this court is not convinced that the statute would be contravened by the production of photocopies outside Quebec or by the inspection of documents within Quebec. Moreover, aside from defendant's failure to respond to plaintiffs' requests for production, defendant has also declined to answer plaintiffs' interrogatories, which would not entail the removal of documents or copies thereof from Quebec. Finally, defendant has not alleged that a restraining order under section 4 of the QBCRA is pending. Under these circumstances, defendant has failed to meet its evidentiary burden in establishing that the provisions of the QBCRA would apply to the discovery sought by plaintiffs in their cases.

### Application of International Law Principles

 Even assuming *arguendo* that the QBCRA is fully applicable to plaintiffs' discovery requests here and that the intent of the statute is to completely bar the extraprovincial dissemination of all information and documents sought in plaintiffs' discovery requests, the statute does not diminish defendant's obligation to respond to plaintiffs' discovery requests or limit this

court's power to compel such responses. First, the legislative enactments of a provincial government such as Quebec are not entitled to comity under the principles of international law. Second, even if provincial statutes were accorded the deference normally paid to the laws of foreign sovereigns, the requirements of comity do not impel this court's acquiescence to the QBCRA's blanket proscription of discovery otherwise permitted by the *Federal Rules of Civil Procedure.*

Concededly, under some circumstances, the "[p]rinciples of international comity require that domestic courts not take action that may cause the violation of another nation's law." *F.T.C. v. Compagnie de Saint-Gobain-Pont-a-Mousson,* 636 F.2d 1300, 1327 n. 150 (D.C.Cir.1980). *See generally* Note, *Ordering Production of Documents from Abroad in Violation of Foreign Law,* 31 U.Chi.L.Rev. 791, 794–96 (1964). However, "[t]he province of Quebec is not a State within the meanings of the doctrines of international law. These doctrines only apply to nations in the international sense such as the United States and Canada." *American Industrial, supra,* at 881. Consequently, the QBCRA is not entitled to deferential consideration under the principles of international law.

Even assuming the applicability of comity and other principles of international law to the present discovery dispute, those principles do not compel blind obedience to the legislative enactments of foreign jurisdictions. Admittedly, "in the realm of international discovery ... the exercise of judicial power should be tempered by a healthy respect for the principles of comity." *In re Anscheutz & Co., GMbH.,* 754 F.2d 602, 614 (5th Cir.1985). Nonetheless, "[a] state having jurisdiction to prescribe or enforce a rule of law is not precluded from exercising its jurisdiction *solely* because such exercise requires a person to engage in conduct subjecting him to liability under the law of another state having jurisdiction with respect to that conduct." *United States v. First National City Bank,* 396 F.2d 897, 901 (2d Cir.1968) (emphasis original), *quoting* Restatement (Second) of Foreign Rela-

tions Law of the United States § 39(1) (1965).

Clearly, "[t]he dilemma is the accommodation of the principles of the law of the forum with the concepts of due process and international comity." *Arthur Andersen & Co. v. Finesilver,* 546 F.2d 338, 341 (10th Cir.1976). This dilemma has been particularly apparent in the context of "blocking" statutes such as the QBCRA, which engender a diametrical conflict between the purpose of the *Federal Rules of Civil Procedure* to foster full and open discovery and the intent of the blocking statute to preclude disclosure of otherwise discoverable information and documentary evidence.

"A blocking statute is a law passed by the foreign government imposing a penalty upon a national for complying with a foreign court's discovery request." *In re Anscheutz, supra,* at 614 n. 29.

At the close of 1979, six foreign states and two Canadian provinces had enacted "blocking statutes," designed to protect their citizens against official inquiries by authorities of other states. Yale Note [88 Yale L.J. 612 (1979)] at 613 nn. 5–6. Foreign nondisclosure statutes have been of two types—the first, providing that a government official may, in his discretion, prohibit the production of a class of documents, *see, e.g.,* Foreign Proceedings (Prohibition of Certain Evidence Act), 1976, Austl. Acts No. 121, § 5, and the second, prohibiting production of *any* documents requested by a foreign tribunal unless those documents are of a type normally sent out of the province in the regular course of business, *see, e.g.,* Business Concerns Records Act, 1964, Que.Rev.Stat. c. 278 (1964). (emphasis original).

*F.T.C. v. Compagnie, supra,* at 1326 n. 145. *See, e.g., Societe Internationale v. Rogers,* 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed. 2d 1255 (1958) (Swiss blocking statute); *Arthur Andersen & Co. v. Finesilver,* 546 F.2d 338 (10th Cir.1976) (Swiss blocking statute); *In re Uranium Antitrust Litigation,* 480 F.Supp. 1138 (N.D.Ill.1979) (Australian, Canadian, South African, and Swiss blocking statutes).

In a very recent case considering discovery of a French corporation, the Supreme Court noted:

> [i]t is clear that American courts are not required to adhere blindly to the directives of [a blocking] statute. Indeed, the language of the statute, if taken literally, would appear to represent an extraordinary exercise of legislative jurisdiction by the Republic of France over a United States District Judge, forbidding him or her from ordering any discovery from a party of French nationality, even simple requests for admissions or interrogatories that the party could respond to on the basis of personal knowledge.

*Societe Nationale Industrielle Aerospatiale, et al. v. U.S. District Court for the Southern District of Iowa,* — U.S. —, —, 107 S.Ct. 2542, 2556 n. 29, 96 L.Ed.2d 461 (1987). By so stating, the Supreme Court endorsed the general analysis of the circuit and district courts which have considered the issue.

> An anomalous situation with great potential effect would result from recognition of the right of a litigant to avoid discovery permitted by local law through the assertion of violation of foreign law. *Foreign law may not control local law. It cannot invalidate an order which local law authorizes.* (emphasis added).

*Arthur Andersen, supra,* at 342. *See, e.g., United States v. First Nat. Bank of Chicago,* 699 F.2d 341 (7th Cir.1983); *United States v. Bank of Nova Scotia,* 691 F.2d 1384 (2nd Cir.1982); *First Nat. Bk. of Cicero v. Reinhart Vertrieb's AG,* 116 F.R.D. 8 (N.D.Ill.1986); *Graco, Inc. v. Kremlin, Inc.,* 101 F.R.D. 503 (N.D.Ill.1984); *Laker Airways Ltd. v. Pan American World Airways,* 103 F.R.D. 42 (D.D.C.1984); *In re Uranium Antitrust Litigation,* 480 F.Supp. 1138 (N.D.Ill.1979); Restatement (Second) of Foreign Relations Law of the United States § 39(1) (1965).

"It is not *ipso facto* a defense to a discovery request that the law of the foreign country may prohibit production or disclosure." *In re Anschuetz & Co., supra,* at 614 n. 29.

If foreign law has in fact prevented the litigant from providing the information despite a United States court order, the good faith of the discovered party is relevant to the sanctions that may be imposed for noncompliance with the court order, *see e.g., Societe Internationale v. Rogers,* 357 U.S. at 205–06, 209–13 [78 S.Ct. at] 1092–93, 1094–96. *In re Westinghouse Elect. Corp. Uranium Contracts Litigation,* 563 F.2d at 996–97, but this does not detract from the authority of the court to order such discovery to take place. *International Society for Krishna Consciousness v. Lee* [105 F.R.D. 435, No. 75 Civ. 5388 (Sept. 11, 1984 S.D.N.Y.)].

*Id.* "[C]onsideration of foreign law problems in a discovery context is required in dealing with sanctions to be imposed for disobedience and not in deciding whether the discovery order should issue." *Arthur Andersen, supra,* at 341.

> [W]hen a state has jurisdiction to prescribe and its courts have jurisdiction to adjudicate, adjudication should (subject to generally applicable rules of evidence) take place on the basis of the best information available. . . . [Blocking] statutes that frustrate this goal need not be given the same deference by courts of the United States as substantive rules of law at variance with the law of the United States.

*Societe Nationale Industrielle Aerospatiale, supra,* at — U.S. —, 107 S.Ct. at 2556 No. 29.

Thus, "[a] United States court has the power to order any party within its jurisdiction to testify or produce documents regardless of a foreign sovereign's views to the contrary." *In re Anscheutz & Co., supra,* at 613 n. 28, *quoting Compagnie Francaise d'Assurance v. Phillips Petroleum Co.,* 105 F.R.D. 16 (S.D.N.Y.1984). Unquestionably, this court possesses the power to enter an order under Rule 37(a) compelling defendant Asten–Hill to respond to interrogatories or to produce documents located abroad.

IT IS THEREFORE ORDERED that plaintiffs' motions to compel be, and hereby

are, granted, and that defendant Asten–Hill is ordered to respond fully and completely to plaintiffs' discovery requests within thirty days from the date of this order.

IT IS SO ORDERED.