**CENTRAL WESLEYAN COLLEGE**
**On behalf of itself and all others**
**similarly situated, Plaintiff,**

v.

**W.R. GRACE & CO., et al., Defendants.**

**Civ. A. No. 2:87–1860–8.**

United States District Court,
D. South Carolina,
Charleston Division.

Sept. 4, 1992.

Daniel Alvah Speights, Hampton, S.C., Edward James Westbrook, Ness, Motley, Loadholt, Richardson & Poole, Charleston, S.C., Herbert B. Newberg, Philadelphia, Pa., for plaintiff.

Phillip Arthur Kilgore, Ogletree, Deakins, Nash, Smoak & Stewart, Greenville, S.C., Patrick Michael Duffy, McNair Law Firm, Charleston, S.C., Robert J. Dougher, Philadelphia, Pa., Steven Wayne Ouzts, Edwin Pruitt Martin, Columbia, S.C., Thomas B. Kenworthy, Morgan, Lewis & Bockius, Philadelphia, Pa., George E. Lewis, Frank Rogers Ellerbe, III, Columbia, S.C., James

H. Watson, Leatherwood, Walker, Todd & Mann, Greenville, S.C., Joseph H. McGee, Buist, Moore, Smythe & McGee, Charleston, S.C., William Stuart Davies, Jr., Nelson, Mullins, Riley & Scarborough, Columbia, S.C., Steven Mark Wynkoop, Ogletree, Deakins, Nash, Smoak & Stewart, James Boyce Pressly, Jr., Haynsworth, Marion, McKay and Guerard, Greenville, S.C., Michael Ard Pulliam, James Warner Alford, Richard Carson Thomas, Barnes, Alford, Stork & Johnson, Columbia, S.C., Thomas M. Boulware, Brown, Jefferies & Boulware, Barnwell, S.C., Charles W. Wofford, Wyche, Burgess, Freeman & Parham, P.A., Greenville, S.C., Ernest Joseph Nauful, Jr., Nauful & Ellis, P.A., David Leon Morrison, Nauful & Ellis, P.A., Columbia, S.C., Michael Evert, Jr., Atlanta, Ga., John Michael O'Rourke, Doyle & O'Rourke, Anderson, S.C., Robert Bruce Shaw, David Gaillard Traylor, Jr., Columbia, S.C., William Ussery Gunn, Holcombe, Bomar, Wynn, Cothran & Gunn, P.A., Spartanburg, S.C., Lewis Walter Tollison, III, Nelson, Mullins, Riley & Scarborough, Columbia, S.C., Andrew Steven Halio, Halio & Halio, Charleston, S.C., R. Clay Ratteree, Savannah, Ga., Wade H. Logan, III, Holmes & Thomson, Coming Ball Gibbs, Jr., Gibbs & Holmes, Charleston, S.C., David Booth Beers, Wendy S. White, Washington, D.C., Frederick F. Saunders, Jr., Atlanta, Ga., William Pearce Davis, Robert Reid Carpenter, Rock Hill, S.C., Curtis M. Pontz, Valley Forge, Pa., Robert Charles Brown, Brown & Woods, Columbia, S.C., Jefferson Boone Aiken, III, Florence, S.C., Daniel Bowman White, Greenville, S.C., Werner L. Polak, Mary Ann Jacoby, New York City, Louis P. Herns, Robert H. Hood & Associates, Robert H. Hood, Robert H. Hood & Associates, George Mark Phillips, Charleston, S.C., Joseph A. Rhodes, Jr., Haynsworth, Baldwin, Miles, Johnson, Greaves & Edwards, Greenville, S.C., Patrick J. Hagan, Oakland, Cal., Harvey Brockinton, Jr., Brockinton, Brockinton & Kerr, Bachman Shirer Smith, III, Sinkler & Boyd, Charleston, S.C., Frederick B. Lacey, Kimba M. Wood, New York City, William Alexander Coates, Walter Harold Arnold, Greenville, S.C., John K. Henderson, Jr., Hartford, Conn., Michael Tucker Cole, Wise & Cole, Timothy William Bouch, Young, Clement, Rivers & Tisdale, Charleston, S.C., Alan Klein, Drinker, Biddle & Reath, Philadelphia, Pa., Bruce Edward Miller, Mark Hedderman Wall, Robinson, Craver, Wall & Hastie, P.A., Charleston, S.C., for defendant.

Basil H. Thomson, Jr., pro se.

John G. Hill, Jr., pro se.

Robert L. Potts, pro se.

Earl V. Brown, pro se.

Estelle A. Fishbein, pro se.

Beverly E. Ledbetter, pro se.

Dennis C. Hart, pro se.

## ORDER

BLATT, Senior District Judge.

This matter is before the Court on Plaintiff's motion to certify a voluntary class for the nation's colleges in this asbestos property damage action, as well as on various other pending motions.

### I. *Background*

#### A. Nature of this Case

This is an action brought on behalf of all colleges and universities in the nation to recover their costs of finding, sampling, evaluating and dealing with asbestos in their buildings. Under federal law, all asbestos that is "friable"—(i.e. easily crumbled)—must eventually be removed from the buildings owned by nation's colleges and universities. 40 C.F.R. § 61.147. Such removal costs could run into the hundreds of millions of dollars. This action seeks to recover all or a portion of that amount from the asbestos miners, millers and manufacturers involved in the chain of distribution for asbestos products in these buildings. The first motion to be considered by the court seeks certification of a class to unite the claims of the colleges and universities against this distribution chain.

This Court does not write upon a clean slate in considering the motion. Any decision in this case occurs against the backdrop of the national asbestos litigation picture, which has been extensively described

by courts and commentators. In addition, decisions on similar motions by other courts may inform, but do not mandate, the decision on this motion.

## B. The National Asbestos Litigation Scene

### 1. *Personal Injury Litigation*

The modern era personal injury litigation began in the late 1960's. For many years the litigation was confined to individual suits. Early efforts to use the class action device were rejected based on the then-prevailing view that product liability cases involved too many individual issues. *See e.g., Yandle v. PPG Industries, Inc.*, 65 F.R.D. 566 (E.D.Tex.1974).

As the number of asbestos personal injury cases grew, some courts began to revisit the issue. Gradually, courts came to realize that a class action is not always an "all or nothing" proposition. These courts invoked Fed.R.Civ.P. 23(c)(4)(A), permitting certification of a limited number of issues when that certification would advance the course of the litigation. Other courts sought similar results using a slightly different tool—mass consolidation of cases with representative plaintiffs; this functioned like a class action in practice.

One of the leaders in the judicial effort to employ the class action and other innovative devices has been the Honorable Robert M. Parker of the Eastern District of Texas. In 1985, Judge Parker certified 893 asbestos personal injury claims for resolution of common issues, including state of the art, product defectiveness, gross negligence and punitive damages. His ruling was affirmed on appeal. *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468 (5th Cir. 1986), *reh'g denied*, 785 F.2d 1034 (5th Cir.1986). The appellate court noted that "the courts are now being forced to rethink the alternatives and priorities by the current volume of litigation and more frequent mass disasters." 782 F.2d at 473. It agreed that Judge Parker's plan "is clearly superior to the alternative of repeating, hundreds of times over, the litigation of the state of the art issues with, as that experienced judge says, 'days of the same witnesses, exhibits and issues from trial to trial.'" *Id.*

Since the *Jenkins* certification, other courts supervising asbestos personal injury cases have moved increasingly to class actions, or consolidations with representative plaintiffs, to try common issues at one time. In the West Virginia state court, several hundred asbestos personal injury cases were consolidated for trial on the common issues of product defect, negligence, conspiracy, punitive damages, breach of warranty and successor liability. *In re Asbestos Cases*, No. 84–C–3321 (W.Va.Cir.Ct. Feb. 15, 1989). A Mississippi state court recently consolidated 5,000 cases for a common issues trial. *See Abrams, et al. v. GAF Corp., et al.*, No. 88–5422 (Miss.Cir.Ct. June 13, 1991), 6 *Mealey's Litigation Reports—Asbestos* 7 (June 21, 1991). In both the West Virginia and Mississippi proceedings, most defendants settled before or during trial.

In another ambitious effort, Judge Parker combined approximately 3,000 personal injury cases in the summer of 1990 and tried the common issues against numerous defendants. *Cimino v. Raymark Industries, Inc.*, 751 F.Supp. 649 (E.D.Tex.1990), *appeal pending*, (5th Cir.). The first phase of that trial determined the common issues of product defect, adequacy of warning, the state of the art defense, fiber type defense and punitive damages. 751 F.Supp. at 653. The second phase of the trial addressed the issues of exposure, which asbestos-containing products were used, asbestos related injury, apportionment of causation among defendants, and amounts of actual or compensatory damages for 169 selected plaintiffs. *Id.* The court then used a statistical method to apply the results of these 169 test cases to the entire class. *Id.*

The largest consolidation action to date, consolidation of 9,000 cases in Baltimore, Maryland, resulted in settlements by almost all defendants and verdicts against the remaining four defendants—(actual and punitive damages). *Abate, et al. v. AC & S, Inc.*, Cons.File No. 89236704 (Md.Cir.

Ct.); *see also,* 6 *Mealey's Litigation Reports—Asbestos* 17 (Sept. 20, 1991).

The capstone of the judicial effort to consolidate asbestos personal injury cases is *In re Asbestos Products Liability Litigation (No. VI),* 771 F.Supp. 415 (Jud.Pan. Mult.Dist.Lit.1991). In that decision, the judicial panel on multidistrict litigation reversed a view it had held for more than a decade and held that 26,639 federal asbestos personal injury cases should be transferred to one jurisdiction for consolidated pretrial procedures. In the past, the panel had denied transfer based on the existence of numerous individual factual questions. *See In re Asbestos and Asbestos Insulation Material Products Liability Litigation,* 431 F.Supp. 906 (Jud.Pan.Mult.Dist. Lit.1977). By July 1991, however, the panel realized that asbestos litigation "requires a new, streamlined approach." *In re Asbestos Products Liability Litigation (No. VI),* 771 F.Supp. at 415. The panel noted that its view of the need for unified treatment of asbestos cases was shared by Chief Justice Rehnquist's "Judicial Conference Ad Hoc Committee On Asbestos Litigation," as well as other leading judges with experience in asbestos litigation. *Id.* at 415, 418.

It is clear that the trend in asbestos personal injury litigation is directed toward some type of class or consolidated proceeding. The parties differ over the effect of this development on property damage cases. Defendants have attempted to distance the property damage litigation from the personal injury litigation, while plaintiffs contend that in the respects relevant to class certification, there is no controlling difference.

### 2. *Property Damage Litigation*

Asbestos property damage litigation is a more recent addition to the asbestos litigation scene. The first asbestos property damage cases were filed in the early 1980's. Significant among these early filings was the national schools class action, ultimately certified and upheld on appeal as a voluntary class action. *In re School Asbestos Litigation,* 104 F.R.D. 422 (E.D.Pa.1984), *aff'd in part and vacated*

*in part,* 789 F.2d 996 (3rd Cir.1986), *cert. denied,* 479 U.S. 852, 915, 107 S.Ct. 182, 318, 93 L.Ed.2d 117, 291 (1986). That case, which parallels this one in many respects, involves a class of approximately 14,000 school districts suing the same defendants who are involved here. In approving voluntary class certification, the appellate panel acknowledged the existence of individual issues, but endorsed the applicability of Fed.R.Civ.P. 23(c)(4)(A), stating:

> [t]here may be cases in which class resolution of one issue or a small group of them will so advance the litigation that they may fairly be said to predominate. Resolution of common issues need not guarantee a conclusive finding on liability ... nor is it a, disqualification that damages must be assessed on an individual basis.·

789 F.2d at 1010 (citations omitted).

Addressing the efficiency of a class, the *School Asbestos* panel, 789 F.2d at 1010, noted:

> Experience shows that in the asbestos litigation arena redundant evidence is the rule rather than the exception.... [t]he use of the class action device appears to offer some hope of reducing the expenditure of time and money needed to resolve the common issues which are of substantial importance. (emphasis added)

Various collateral appeals have stymied any trial on the merits in that case.

Additionally, a Philadelphia state court has recently certified a national class action for the nation's commercial buildings leased in any part to the Federal Government. *Prince George Center, Inc., et al. v. United States Gypsum Co.,* No. 5388 (April 16, 1992). Another federal trial court has consolidated the asbestos property claims of numerous Texas cities, counties and school districts for a single trial on common issues. *Dayton Independent School District et al. v. U.S. Mineral Product Company,* B–87–00507–CA, 1989 WL 237732 (E.D.Tex. Feb. 14, 1989). Noting that 16 years of asbestos litigation in the district had taught "the case-by-case approach to the management of these cases is totally unacceptable," the court ordered

a common issues trial to proceed on issues including defendants' knowledge of the hazard of asbestos, their testing and warning—(or lack thereof)—conspiracy, and punitive damages.

Reaching a similar result, the Texas Court of Appeals recently affirmed certification of a class of 67 Texas school districts with asbestos property damage claims. *National Gypsum Co. v. Kirbyville Independent School District et al.*, 770 S.W.2d 621 (Tex.Ct.App.1989), *writ dismissed*, (Tex.Sup.Ct.1990). The Court noted that the Texas Class Certification Rule, fashioned from the Federal Rule, was expressly "designed to meet this type of case...." 770 S.W.2d at 629. It found the class action superior to individual litigation:

> The only alternative would be a case by case review or joinder of some districts permitted by the venue statutes. Each would involve much greater judicial effort, duplication of discovery, greater numbers and time consumed by attorneys, witnesses, etc.

*Id.*

On the other hand, a proposed national class action for hospitals met with a different fate. In *Sisters of Saint Mary, et al. v. AAER Sprayed Insulation, et al.*, No. 85 C.V. 5952 (Wis.Cir.Ct. Dec. 17, 1987), a Wisconsin state court denied certification of a proposed national class for hospitals based on manageability concerns. Its decision was affirmed on appeal as being within the bounds of discretion. *Sisters of St. Mary, et al. v. AAER Sprayed Insulation, et al.*, 151 Wis.2d 708, 445 N.W.2d 723 (App.1989), *petition for rev. denied*, — Wis.2d —, 449 N.W.2d 275 (1989).

In addition to these attempts at class or consolidated treatment, a number of individual asbestos property damage cases have been filed. It appears that approximately thirty such cases have been tried, with mixed results. There have been a number of significant verdicts for building owners, including a landmark case in this district. *City of Greenville v. W.R. Grace*, 640 F.Supp. 559 (D.S.C.1986), *aff'd*, 827 F.2d 975 (4th Cir.1987), *reh'g denied*, 840 F.2d 219 (4th Cir.1988). Likewise, there have been a number of defense victories. *See e.g. Cinnaminson Township Bd. of Educ. v. United States Gypsum Company*, 882 F.2d 510 (3rd Cir.1989). Each individual case normally requires a minimum of one week to four or five weeks to try. Appeals, which appear to be almost automatic in these cases, extend the litigation life of each such appealed case by at least a year.[1] Thus, each individual asbestos property damage case has an expected litigation life of at least 2–3 years.

## C. The Future of Asbestos Litigation

Two decades of personal injury litigation and eleven years of property damage litigation have taken their toll on numerous defendants. Chief Justice Rehnquist's Ad Hoc Committee on Asbestos Litigation recently reported "[a]mong the approximately 25 major asbestos defendants, 11 have filed for bankruptcy." Ad Hoc Report at 14. Likewise, after calling the role of defendants in bankruptcy, Judge Robert Parker acknowledged "other defendants are clearly in the twilight of their participation." *Cimino v. Raymark Industries, Inc.*, 751 F.Supp. 649, 650–651 (E.D.Tex. 1991), *appeal pending* (5th Cir.).

Since this case was filed, six defendants have declared bankruptcy (National Gypsum Co., Celotex Corp., Eagle Picher Industries, Inc., HK Porter Company, Southern Asbestos and Raymark Industries, Inc.). Asbestos litigation undoubtedly contributed to their demise. A much cited report has noted that defendants have been paying, on average, almost 40% of their total asbestos costs for their own attorneys and experts.[2] A recent report, focusing on asbestos property damage litigation costs, indicates even greater "in house" costs. In

---

1. A compilation of the asbestos property damage trials as of June, 1990, revealed that of the 23 cases tried at that time, only 3 had not been appealed. *National Journal of Asbestos In Buildings*, June 8, 1990 at 19A.

2. Kakalik, Ebener, Felstiner and Shanley, Cost of Asbestos Litigation, The Institute for Civil Justice, The Rand Corporation, V–VII (July 1983).

a public disclosure in its bankruptcy action, Celotex Corporation revealed that it had paid its own attorneys and experts over 36 million dollars to defend asbestos property damage claims, while paying out only 6.7 million in verdicts and settlements to building owners.[3] Continued individual adjudication appears to carry the very real risk of forcing additional defendants into bankruptcy.

### D. The History of the College and University Class Action Litigation

#### 1. *Procedural History.*

On August 1, 1986, a proposed national class action for colleges and universities was filed in this court. *Clemson University and The College of Charleston v. W.R. Grace,* No. 2:86–2055–2. It was followed by the filing of the *Central Wesleyan* case, on July 17, 1987, as a related case. The *Central Wesleyan* complaint was identical in all material respects to the *Clemson* complaint. Both cases were assigned to Hon. C. Weston Houck. After several years of discovery, Judge Houck dismissed the *Clemson* action on July 18, 1988, on the ground that its named plaintiffs were so closely aligned to the State that they could not be "citizens" of the State for diversity purposes. *See* Docket No. 478.

Following additional discovery in this case, Central Wesleyan moved for class certification on December 27, 1988. Opposition and reply briefs were filed through the spring of 1989. Thereafter, in August, 1990, Judge Houck recused himself and the case was assigned to this Court. Following a status conference on March 11, 1991, this Court referred pretrial matters to Magistrate Judge Robert S. Carr, who set a schedule for supplemental class certification briefing. That briefing was completed on June 3, 1991. This Court heard oral argument on the Motion to Certify on June 19, 1991, and it has waited unsuccessfully

since that date to determine if any of the procedures used in *In re School Asbestos Litigation,* 789 F.2d 996 (3rd Cir.1986) and in *In re Asbestos Products Liability Litigation (No. VI),* 771 F.Supp. 415 (Jud.Pan. Mult.Dist.Lit.1991), could be followed here to expedite a solution to the asbestos problems plaguing this nation's courts.

#### 2. *The Product Identification Discovery Dispute.*

While it is unnecessary to recount in any detail the numerous disputes which arose during the pre-certification discovery phase, one particular issue deserves mention because of its impact on these proceedings. During the course of pre-certification discovery, Plaintiff sought to discover from Defendants which colleges had Defendants' products, as reflected in Defendants' records or as known to their corporate employees. Defendants took the position that they would not provide such evidence because that evidence was a "merits" issue, inappropriate for class certification discovery under Judge Houck's rulings; rather, they contended that the only product identification information they were required to supply was for the class representative. Plaintiff's counsel contended, however, that if Defendants intended to raise a challenge to Central Wesleyan's adequacy of representation based on lack of proof of a particular defendant's products in its buildings, Plaintiff's counsel was entitled to product identification evidence concerning other colleges who might wish to offer themselves as class representatives or intervenors.[4] *See Int'l. Woodworkers of America, AFL–CIO, CLC v. Chesapeake Bay Plywork Corp.,* 659 F.2d 1259 (4th Cir.1981)—[if class representative is inadequate, other class members may come forth to offer themselves as substitute representatives].

The Defendants have not yet provided information concerning their sales of prod-

---

**3.** See Celotex Corp. "Claims Costs—Asbestos Bodily Injury and Property Damage Cumulative through October 12, 1990", at 2 (May 23, 1990).

**4.** Several colleges including Baylor University, Johns Hopkins University, Merrimack College, Marquette University, The University of Ala-

bama, Brown University and Boston University have filed briefs in support of the Motion to certify and several have offered themselves as intervenor plaintiffs if the Court deems such intervention necessary. *See* Dkt. Nos. 212, 214, 215, 217, 218, 220, 223.

ucts to colleges other than the named class representative. Consequently, as this case is presented to the Court on motion for class certification, the Plaintiff has produced evidence that eight of its buildings contain asbestos materials, including pipe insulation, hot water tank insulation, elbow insulation, spray insulation and spray ceiling material.[5] The Plaintiff has not produced evidence of product identification as to any specific defendant except National Gypsum, now in bankruptcy. Furthermore, as of this date, the Plaintiff has not had access to the Defendants' records or witnesses to determine which defendants sold asbestos products to other colleges or universities. The arguments of the parties must be considered against these facts.

## II. *Class Action Treatment in the Fourth Circuit*

In their briefs, Defendants put much weight on *Windham v. American Brands, Inc.,* 565 F.2d 59 (4th Cir.1977 *en banc*), *cert. denied* 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978), which affirmed Judge Chapman's refusal to certify a class where individual damages predominated. *Windham* appears to have been undermined, however, by Judge Russell's more recent opinion in *In re A.H. Robins, Inc.,* 880 F.2d 709 (4th Cir.1989), *cert. denied sub nom, Anderson v. Aetna Casualty & Surety Company,* 493 U.S. 959, 110 S.Ct. 377, 107 L.Ed.2d 362 (1989). In his opinion, Judge Russell reviewed the history of the class certification rule, including its recent application to mass torts such as the asbestos school litigation. Like judges in asbestos litigation, Judge Russell, 880 F.2d at 726, recounted concerns about individual adjudication of mass tort cases:

> When account is also taken of the toll of such cases on the court system itself, it is evident that the proper functioning of the courts and the fair and efficient administration of justice for other litigants

whose right to a judicial determination are inevitably delayed inordinately by the clogging of the court system by mass tort actions tried individually and the societal costs of the endless repetition of these suits in separate trials at substantial cost to the judicial system mean that a mechanism for deciding expeditiously, efficiently and relatively inexpensively these actions without the delays of individual suits is demanded.[6]

Judge Russell endorsed the class action as such a mechanism: "the class action ... is the manifest fair and expeditious procedure for disposing of the mass tort litigation." 880 F.2d at 727.

Citing the *School Asbestos* class action approvingly, Judge Russell noted "the trend has been for courts to be more receptive to use of the class action device in mass tort litigation." 880 F.2d at 734. Interestingly, the two examples Judge Russell cited to support his liberal interpretation of Rule 23 were both asbestos cases— *Jenkins v. Raymark Industries, Inc.,* 782 F.2d 468, 473 (5th Cir.1986) (asbestos personal injury) and *In re School Asbestos Litigation,* 789 F.2d 996, 1009 (3rd Cir. 1986) (asbestos property damage).

While Defendants point out that *A.H. Robins* involved one product, two defendants, and had essentially been settled by the time of certification, Plaintiff responds that the *Robins* settlement envisions jury trials for claimants from across the country who elect not to take settlement offers. 880 F.2d at 745. Their cases will presumably be tried under the law of their respective states. At a minimum, *A.H. Robins* signals a more expansive view of class certification than had been thought to prevail before that decision.

With this background on the asbestos litigation and the proceedings to date, the Court turns to the issue of certification of this class.

---

**5.** November 5, 1987, letter from J. Anderson Berly to Defendants, enclosing supplemental responses to interrogatories. (Attachment L to Plaintiff's Reply Brief in Support of Class Certification).

**6.** If the past is in any way indicative of the future, this Court can foresee nothing that is "relatively inexpensive" in the asbestos litigation field. However, class certification will, in this Court's opinion, be the least expensive procedure to follow in the pending matter.

III. *Federal Rule of Civil Procedure 23*

In order to be certified, a proposed class action must meet the requirements of Fed. R.Civ.P. 23(a) and at least one of the subdivisions of Rule 23(b). Since plaintiffs seek a voluntary class, the Court must examine Rule 23(a) and Rule 23(b)(3).

A. Rule 23(a)

Rule 23(a) sets forth four basic requirements for any class action—numerosity, commonality, typicality and adequacy. The court discusses each of these in turn.

1. *Numerosity*

■ Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. The record indicates there are approximately 3,000 public and private colleges and universities in the United States. In its brief, Plaintiff estimates that 16–35 percent have friable asbestos that would qualify them for inclusion in this class.[7] By any measure, the numerosity requirement is met. In this circuit, class actions have been found to meet the numerosity requirement with as few as 18 members. *See Cypress v. Newport News General and Nonsectarian Hospital Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967).

2. *Commonality*

■ Rule 23(a)(2) requires that the court find that "there are questions of law or fact common to the class." This subsection does not require that all, or even most issues be common, nor that common issues predominate, but only that common issues exist. *See Holsey v. Armour & Co.*, 743 F.2d 199, 216–217 (4th Cir.1984), *cert. denied*, 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 784 (1985). Clearly, there are common issues of fact. *See In re School Asbestos Litigation*, 789 F.2d 996, 1010 (3rd Cir.1986). Indeed, the thrust of the judicial effort to consolidate asbestos litigation has been based on judicial consensus about the existence of numerous common questions, including the general health hazards of asbestos, Defendants' knowledge or reason to know of these hazards, their failure to warn/test, Defendants' concerted action or conspiracy and Defendants' liability for punitive damages. In the context of this asbestos property damage action, additional questions such as the friability—(propensity to crumble)—of Defendants' products, the applicability of the NESHAPS regulations to these products and the need for inevitable removal of these products could also be added.

■ Defendants insist out that not all Defendants acted in the same manner toward the proposed class. However, the focus of the commonality requirement "must be on whether the fact to be proved is common to the members of the class, not whether it is common to all the defendants." *In re Asbestos School Litigation*, 789 F.2d at 1010. Accordingly, the fact that some Defendants may have adopted different testing, warning or marketing strategies for their asbestos products does not affect the commonality requirement. As long as a Defendant acted in a common way toward the class, the fact that another Defendant acted in a different way does not affect the commonality requirement. The Court finds that the commonality requirement is also met.

3. *Typicality and Adequacy*

■ The parties have treated these requirements together.[8] These subsections of Rule 23(a) require that the claims of the representative parties by typical of the claims of the class and that the representative adequately protect the interest of the class.

With respect to typicality, Plaintiff contends that the friable asbestos materials in its building, like friable asbestos in all college buildings, will inevitably deteriorate over time, releasing asbestos fibers and

---

7. Plaintiff's Brief, p. 19; Deposition of Sheldon E. Steinbach, January 7, 1987, at 134–135, in No. 2:86–2055–2; EPA *Study Of Asbestos–Containing Material In Public Buildings—A Report to Congress* (Feb.1988) at 10.

8. *See e.g., Brief of Certain Defendants* at 106.

requiring extensive remedial measures with ultimate removal mandated by federal law. *See* 40 C.F.R. § 61.147 [NESHAPS regulations requiring separate asbestos removal before major renovation affecting friable asbestos or before demolition]. The Fourth Circuit Court of Appeals has recently labeled "specious" an asbestos company's argument denying the inevitability of a building owner's asbestos removal costs in light of the federal regulations. *See City of Greenville v. W.R. Grace*, 827 F.2d 975, 982 (4th Cir.1987), *reh'g denied*, 840 F.2d 219 (4th Cir.1988). This federal regulatory scheme unites the claims of all colleges with friable asbestos regardless of the exact product involved. Indeed, the court handling the *National Schools* class action has recently held that "the NESHAPS regulations are appropriately noticed by the Court today as establishing the scope of damage caused to Plaintiffs by the presence of friable asbestos in their school buildings."[9]

 Central Wesleyan has produced evidence that it has in its buildings both of the major types of asbestos material involved in this lawsuit—thermal insulation and spray asbestos surfacings. *See* Attachment L to Plaintiff's Reply Brief In Support of Class Certification. A claim is typical if it arises from the same course of conduct that gives rise to the claims of the class members and if the claims are based on the same legal theories. H. Newberg, *Newberg on Class Actions* § 3.13 n. 202 (1985) (cases collected). Here, Central Wesleyan contends that its claim arises from friable asbestos in its building, as do the claims of the other colleges with such materials. Plaintiff also contends that its

legal claims harmonize with those of other class members on the common theories of negligence, strict liability, breach of warranty and conspiracy, at a minimum.[10]

Defendants have raised the concern, sometimes discussed in terms of typicality, sometimes in terms of adequacy, and sometimes in terms of standing, that Central Wesleyan cannot represent this class because it has not proven that it has the asbestos products of each of the Defendants in its buildings. Central Wesleyan responds that it has alleged a conspiracy claim against the Defendants and, therefore, at this stage of the proceedings, it need not show that it has the products of each Defendant. Further, Central Wesleyan points out that Defendants have prohibited class Plaintiffs from discovering information known to Defendants about the colleges to whom they sold asbestos products. Central Wesleyan claims that with this information the class would be in a better position to meet Defendants' challenges concerning product identification by adding class representatives if necessary.

As a preliminary matter, it is clear that Central Wesleyan is an "adequate" representative in terms of the vigor with which it has approached the case and the competency of its counsel. Class counsel has abundant experience in class actions and asbestos litigation. Further, no college or university has made any challenge to the adequacy of Central Wesleyan's representation. On the contrary, a survey of over 2,000 colleges conducted for this litigation by a national college organization indicated that only fifteen colleges indicated an in-

---

**9.** *In Re: School Asbestos Litigation*, No. 83–0268 (E.D.Pa. Sept. 4, 1991) (1991 WL 175819). Likewise, in *New Hampshire–Vermont Health Service Corporation v. United States Mineral Products Company*, No. C–87–207–L (D.N.H. July 29, 1991), another federal court has reiterated that under the federal regulations "[t]here is little doubt that all of the asbestos containing material must be removed upon demolition of the building or upon major renovation." Slip op. at 6.

**10.** Defendants point out that there is no strict liability action in South Carolina for these claims, because the products were sold prior to

1974. *Schall v. Sturm, Ruger Co. Inc.*, 278 S.C. 646, 300 S.E.2d 735, 737 (1983). Central Wesleyan responds, however, that the difference in legal theories has nothing to do with certification of common factual issues. Moreover, South Carolina courts have held that by proving a negligence claim, Plaintiff would also be proving a strict liability claim, as the two theories overlap. *See Madden v. Cox*, 284 S.C. 574, 328 S.E.2d 108, 112 (App.1985), *appeal dismissed*, 286 S.C. 127, 332 S.E.2d 102 (1985). The distinction between the theories does not appear to be a significant hurdle to certification.

tention to opt out of the class action if certified.[11]

■ Viewing Defendants' challenge as a standing or subject matter jurisdiction argument, several considerations come into play. First, a court is not required to make an immediate determination of the sufficiency of its jurisdiction. Rather, the method of entertaining a subject matter challenge "is left to the sole discretion of the trial judge who may defer that determination until trial." *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188, 1195 (6th Cir.1988); *In re School Asbestos Litigation* 921 F.2d 1310, 1315–1317 (3rd Cir. 1990) (Approving trial court's decision to defer amount in controversy determination until trial), *cert. denied*, — U.S. —, 111 S.Ct. 1623, 113 L.Ed.2d 720 (1991). Central Wesleyan contends that postponement of the product identification inquiry was exactly what was envisioned by Judge Houck when he prohibited merits discovery until class certification had been decided. *See* Tr–Feb. 12, 1987 Hearing at 51–52; Feb. 29, 1988 Hearing at 16–17. The United States Supreme Court has recently affirmed the authority of district courts to permit discovery concerning the scope of their subject matter jurisdiction. *U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 108 S.Ct. 2268, 101 L.Ed.2d 69 (1988).

As the court understands the current record, Defendants do not deny that their products are likely to be found in some colleges or universities. They simply deny that Central Wesleyan is one of them. However, they have refused to provide Plaintiff's counsel, in response to discovery requests, sales records and other information to enable Plaintiff's counsel to determine which other colleges may have received Defendants' materials.

With respect to Central Wesleyan's conspiracy claim, the court agrees that "when plaintiffs alleged injury as a result of a conspiracy in which the non-dealing defendants participated, plaintiffs have alleged standing to sue the non-dealing defendants." *Brown, et al. v. Cameron–Brown Company*, 652 F.2d 375, 378 (4th Cir.1981). Again, with merits discovery suspended until after the decision on class certification, the record is not complete concerning the existence or contours of such a conspiracy. Conspiracy claims have been permitted in asbestos litigation. *See e.g., Nicolet, Inc. v. Nutt et al.*, 525 A.2d 146 (Del.Sup.Ct. 1987).

In light of the fact that Plaintiff's counsel has pressed for discovery concerning product identification and that this discovery has been resisted by Defendants, the court will delay a final decision on the appropriate class representative until the post-certification phase of discovery. On the present record, for the purposes of conditional certification, the Court finds that Central Wesleyan has sufficiently alleged a conspiracy and should be permitted to proceed as a class representative. The Court will reserve a final decision on the appropriate representative(s) until after the "product identification" phase of discovery is completed.

■ Several Defendants assert that any option to permit additional intervenor colleges to become class representatives is futile, because the South Carolina "door closing statute" would deprive the court of jurisdiction over out of state colleges. They rely on *Proctor & Schwartz, Inc. v. Rollins*, 634 F.2d 738 (4th Cir.1980).[12] *Rollins* did not deal with class certification,

---

**11.** Affidavit of David S. Byer, Program Manager of the National Association of College and University Business Officers (March 3, 1989); Attachment K to Plaintiff's Reply Brief In Support of Class Certification.

**12.** The court notes that although *Rollins* did call attention to the lack of subject matter jurisdiction therein, the South Carolina Supreme Court has since indicated that door-closing statutes affect a foreign corporation's capacity to sue,

rather than a court's subject matter jurisdiction. See, *Cummings v. Varn*, — S.C. —, 413 S.E.2d 829 (1992), citing *Hot Roll Mfg. Co. v. Cerone Equipment Co.*, 38 A.D.2d 339, 329 N.Y.S.2d 466 (1972) and *Video Engineering Co. v. Foto–Video Electronics, Inc.*, 207 Va. 1027, 154 S.E.2d 7 (1967).

In addition, the court is not convinced that this is the appropriate stage in which to address the issues presented by a door-closing statute.

but the Fourth Circuit Court of Appeals did distinguish the countervailing federal considerations which led to a jurisdictional basis for its holding in *Szantay v. Beech Aircraft Corp.*, 349 F.2d 60 (4th Cir.1965). In *Szantay* the panel held that a federal court need not apply the state "door closing" statute if important countervailing federal considerations would be frustrated. One consideration the court mentioned therein was the federal policy to encourage efficient joinder in multi-party actions. Similar considerations, as discussed in section 1B, have compelled such eminent authorities as the Chief Justice's Ad Hoc Committee On Asbestos Litigation and the Judicial panel on Multi–District Litigation to recommend and require, respectively, that all federal asbestos personal injury actions from fifty states be moved to one district. This unprecedented action, never before suggested by such distinguished groups, and which action had been expressly rejected by numerous courts over the past 12 years, speaks loudly regarding the importance of the countervailing federal consideration of consolidating asbestos litigation in one forum wherever possible.[13]

In addition, it is uncertain that the "door closing" statute would apply in the class action context here. The Supreme Court has held that it is "merely a matter of form" for an absent class member to become a formal party of record by intervention. *See Stewart v. Dunham*, 115 U.S. 61, 5 S.Ct. 1163, 29 L.Ed. 329 (1885). Analyzing the subject matter jurisdiction requirements of a class action intervenor, a leading treatise has stated:

> Thus it has long been well settled that independent grounds of jurisdiction are not required for intervention, whether it be thought of right or permissive, by a member of a class who will be bound by the judgment, either in general or with regard to a particular fund.[14]

For these reasons, the Court does not believe that the door closing argument defeats conditional certification at this time or would necessarily prevent the intervention of additional, non-resident plaintiffs at some later date.

■ Some of the Defendants have also raised a claim that this Court has no jurisdiction to handle asbestos property claims of any college or university outside of South Carolina because of the "local action" doctrine. That doctrine developed out of hesitancy of courts to affect title to, or possession of, land in another state. The "local action" doctrine has been held inapplicable by several courts handling asbestos property damage actions, including the *National Schools* class action, on the ground that these are essentially transitory tort actions, which do not affect title to, or possession of, real estate. *See In re School Asbestos Litigation*, 921 F.2d 1310, 1319 (3rd Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1623, 113 L.Ed.2d 720 (1991) ["Because the alleged claims appear transitory and are not bound to any issues of

---

**13.** In *Proctor & Schwartz, Inc.*, infra, this court was told that it had reached too far when it held that justice achieved in saving a cause of action for personal injury from total loss, due to a statute of limitations defense, was not a sufficient countervailing federal consideration so as to warrant application of the *Szantay* doctrine and avoid the South Carolina door-closing statute. If interest in solving the asbestos litigation fiasco, which is creating immeasurable harm to both plaintiffs and defendants, is not a sufficient countervailing federal consideration as defined in *Szantay*, then this court is at a total loss as to the true meaning of a countervailing federal consideration (or interest). An effort to provide a remedy to plaintiffs who have spent years on the doorsteps of the federal court system, and an effort to prevent additional defendants from bankrupt status (again implicating the federal court system and judicial economy), based largely on enormous legal and other related expenses incurred in the "asbestos war" must, in this court's opinion, be a countervailing federal consideration which may serve as a partial answer to the questions which Chief Justice Rehnquist posed to his Ad Hoc Committee on Asbestos Litigation and which will serve as a springboard to progress in solving the "asbestos war".

**14.** *See* 7C Wright, Miller and Kane *Federal Practice and Procedure*, § 1917 at 470–71 (1986). Professor Miller appeared before this court to argue a portion of the class certification motion for the Plaintiff. When questioned by the court, it appeared he had changed from his earlier published views on the legal issues here involved. Absent Professor Charles Allen Wright's co-authorship of this treatise, this court might look askance on Professor Miller's "teachings" on this issue.

title or possession of real property, we reject Kaiser Gypsum's local action argument"]. *Dayton Independence School District et al. v. U.S. Mineral Products Co.*, B–87–00507–CA (E.D.Tex. Feb. 14, 1989). ["[r]egardless of the nomenclature used, these claims are transitory rather than local in nature ... [t]he local action rule is not applicable to Plaintiffs' claims." Slip op at 10.] The Court agrees that the local action doctrine is not a bar to certification.

For the foregoing reasons, the Court finds the prerequisites of Rule 23(a) are met. The Court now turns to the requirements of Rule 23(b).

## B. Fed.Rule 23(b)(3)

■ Fed.R.Civ.P. 23(b)(3) permits certification when the court finds that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The rule lists four inquiries pertinent to making the determination whether to certify under this rule:

1. the interest of members of the class in individually controlling the prosecution or defense of separate actions;

2. the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

3. the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

4. the difficulties likely to be encountered in the management of a class action.

The Court now examines each of these requirements.

### 1. *The Colleges' Interest in Individual Litigation.*

This factor clearly favors certification. In a survey of approximately 2,000 poten-

tial class members by a national college organization, only 15 stated their intention to opt out.[15] The program manager for this national college organization has stated that "the overwhelming consensus among the colleges is to proceed on a unified basis." [16]

### 2. *The Extent of Pre–Existing Litigation.*

The parties agree that there have been relatively few individual college lawsuits filed. Defendants contend this is either because colleges do not have individual claims, or because they have little interest in bringing them. Plaintiff contends that this is due to the fact that the proposed college class action has been nationally coordinated from its inception, that colleges have been kept informed by their national organizations of its progress and are not filing individual actions in reliance on the pendency of this case.

Whatever the reason for the lack of individual filings, the inquiry under this portion of the rule is aimed at determining whether there is so much pre-existing litigation that a class would be unproductive—such is clearly not the case here.

### 3. *The Desirability of This Forum.*

Defendants raise several claims attacking the desirability of this forum. First, they contend that litigants would have to travel far to come here; however, travel would be a factor wherever a national class action was located. Second, several Defendants raise the "local action" doctrine. As previously noted, other courts—(and this Court agrees)—have found that doctrine not applicable. If applied, the doctrine would totally prohibit national class actions which in any way involve out of state property.

Defendants do raise one argument against this forum that may not exist in other forums, that the "South Carolina door-closing" statute prohibits this court from entertaining any suit on claims involving out of state Plaintiffs. The Court has

---

15. Affidavit of David S. Byer, Program Manager of NACUBO; Attachment K to Plaintiff's Reply Brief In Support of Class Certification.

16. *Id.*

already explained why it feels that such statute is inapplicable here; moreover, the only named Plaintiff is a South Carolina resident. Therefore, on the face of the complaint, the door-closing statute is not violated. The citizenship of absent class members is not considered in determining subject matter jurisdiction in class actions. *See In re School Asbestos Litigation,* 921 F.2d 1310, 1317–1318 (3rd Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1623, 113 L.Ed.2d 720 (1991) [reaffirming rule that only the citizenship of the named plaintiff is considered for subject matter purposes]. The Court finds no impediments to this district serving as the forum for this litigation.

### 4. *Manageability.*

There are formidable problems in managing a class of this size. Defendants point to the *School Asbestos* class action as proof of their predictions of unmanageability. Plaintiff counters that the years that the *School Asbestos* case has consumed since its 1983 filing were to be expected because it was the first case of its kind. Plaintiff also points out that discovery did not begin in that case until 1987 due to appeals of the certification order permitted by the district court. It further appears that the first phase of the *School Asbestos* case was proceeding toward trial when the Defendants sought a mandamus petition to force recusal of the trial judge. The duration of that case thus far is not necessarily long considering that the claims of 14,000 school districts may be resolved in that action. Furthermore, in at least eight years, only 30 individual asbestos property damage cases have been brought to trial.

Courts which have confronted the manageability problem have adopted one of two attitudes. One court has simply ruled that problems of manageability prevent the certification of a national class action. *See Sisters of Saint Mary et al. v. AAER Sprayed Insulation et al.,* 151 Wis.2d 708, 445 N.W.2d 723 (App.1989), *petition for rev. denied,* —— Wis.2d ——, 449 N.W.2d 275 (1989). Other courts have attacked the manageability issue by viewing the class not as an "all or nothing" proposition, but

an effort to determine if certification of a limited number of issues, coupled with subclasses where required, can reduce manageability concerns. These courts have typically certified certain issues for determination which are heavily weighted toward the repetitive factual issues. *See* Section IB.

This approach has appeal. The main problem in handling large numbers of asbestos claims individually has been with the duplication of effort on common issues, such as Defendants' knowledge, testing, warning—(or lack thereof)—state of the art, and similar issues where the same testimony and evidence is introduced repeatedly. A Texas federal court, citing the brief of several asbestos companies in the *National Schools* class action, recently discussed this problem of repetitive proceedings:

> As noted by Defendants in their brief in *In re Asbestos School Litigation,* ... "with respect to such issues as negligence, reasonable danger, state of the art ... the precise facts applicable to the claim of any plaintiff are equally applicable to the claims of others...." The resolution of these issues, Defendants assert, "involves the same witnesses, the same discovery, the same documents, and the same factual and legal determinations."

*Dayton Independent School District et al. v. U.S. Mineral Products Co. et al.,* B–87–00507–CA, 1989 WL 237732 (E.D.Tex. Feb. 14, 1989) at 3–4.

In the *National Schools* class action, 789 F.2d at 1010, the appellate panel expressed a similar sentiment:

> Experience shows that in the asbestos litigation arena redundant evidence is the rule rather than the exception.... [t]he use of the class action device appears to offer some hope of reducing the expenditure of time and money needed to resolve the common issues which are of substantial importance.

The Third Circuit panel approved the use of limited certification pursuant to Fed. R.Civ.P. 23(c)(4)(A):

> There may be cases in which class resolution of one issue or small group of them

will so advance the litigation that they may fairly be said to predominate. Resolution of common issues need not guarantee a conclusive finding on liability ... nor is it a disqualification that damages must be assessed on an individual basis.

789 F.2d at 1010. (citations omitted)

The Third Circuit's sentiment was echoed by Judge Russell in *A.H. Robins* where he stated:

In order to promote the use of the class device and to reduce the range of the issues, courts should take full advantage of the provision in subsection (c)(4) permitting class treatment of separate issues in the case and, if such separate issues predominate sufficiently (i.e., is the central issue), to certify the entire controversy as in *Agent Orange*.

880 F.2d at 740.

Judge Russell's observation makes an important distinction. He notes that separate issues can be certified for class treatment to reduce the range of disputed issues, even if the certified issues are not the "central" issues in the case. If the certified issues are the central issues, then the court can certify the entire controversy for class treatment.[17]

From a review of the cases, there appears to be a judicial consensus on the common issues in asbestos cases when certification can advance the judicial inquiry. With some variations, these issues focus on hazard,[18] knowledge, conspiracy, testing, warning, and intentional or reckless conduct.[19]

After considering all of the factors, the court has determined to exercise its discretion under Fed.R.Civ.P. 23(c)(1) to certify conditionally certain issues for a Phase One certification procedure. Pursuant to Fed. Civ.P. 23(d)(1), permitting this Court to make appropriate orders concerning the "course of proceedings," the Court has determined the case will proceed with discovery and presentation of evidence on the common issues defined below. At the same time, the Court will require, pursuant to Rule 23(c)(2), that notice be provided to the class concerning the limited certification, including the right to intervene in the action. *See* Fed.Civ.P. 23(d)(2). Plaintiff's counsel should present a proposed form of notice to defense liaison counsel for comments within 45 days of the date of this order.

As part of the Phase One proceedings, the court will permit Plaintiff's counsel to conduct "product identification" discovery against all Defendants aimed at determining which colleges or universities have Defendants' asbestos containing products or asbestos. Colleges and universities will also be given the opportunity to intervene in this action and present themselves as additional class representatives if they so desire. The Court will defer a final decision on the standing of Central Wesleyan or any additional class Plaintiffs to represent the class against each of the Defendants until after conclusion of product identification discovery.

---

**17.** This distinction may explain Judge Russell's statement in *Stott v. Haworth*, 916 F.2d 134, 145 (4th Cir.1990), that "[c]lass certification is only proper when a determinative critical issue overshadows all other issues." Judge Russell could have been referring to a "total certification" in *Stott*. Thus, it appears that *Stott* does not necessarily detract from Judge Russell's statements in *Robins* concerning partial certification of limited issues which assist in resolving aspects of a controversy.

**18.** While defendants contend that this issue should be limited to their knowledge of the health hazards of asbestos from products installed in buildings, courts have indicated that knowledge of the hazards of asbestos in other settings is also relevant. *See City of Greenville v. W.R. Grace*, 640 F.Supp. 559, 567 n. 1 (D.S.C.

1986) [noting that occupational exposures are relevant in property damage suits], *aff'd*, 827 F.2d 975 (4th Cir.), *reh'g denied*, 840 F.2d 219 (4th Cir.1988).

**19.** *See Dayton Independent School District et. al v. U.S. Mineral Products Co.*, B–87–00507–CA (E.D.Tex. Feb. 14, 1989); *In re School Asbestos Litigation*, 104 F.R.D. 422, 429 (E.D.Pa.1984), *aff'd in part, vacated in part*, 789 F.2d 996 (3rd Cir.1986), *cert. denied*, 479 U.S. 852, 915, 107 S.Ct. 182, 318, 93 L.Ed.2d 117, 291 (1986); *National Gypsum Co. v. Kirbyville Independent School District*, 770 S.W.2d 621 (Tex.Ct.App. 1989), *writ dismissed*, (Tex.Sup.Ct.1990); *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 471 (5th Cir.1986), *reh'g denied*, 785 F.2d 1034 (5th Cir.1986).

The common issues to be addressed in the Phase One certification are as follows:

1. Whether the Defendants knew or had reason to know of the health hazards of asbestos—(the "state of the art").

2. Whether certain categories of asbestos products—(fireproofing, acoustical ceiling sprays, thermal insulation)—are "friable", or are capable of becoming "friable" as defined in the federal regulations, and, therefore, must be removed at some time under those regulations.

3. Whether Defendants' asbestos products can release asbestos fiber under foreseeable use, including maintenance, renovation and demolition.

4. Whether Defendants participated in conspiratorial activities, either industrywide or within segments of the industry.

5. Whether Defendants failed adequately to test their products for fiber release potential.

6. Whether Defendants failed to warn of the propensity of their products to release asbestos fibers and contaminate buildings or of the potential hazards of their asbestos products.

7. Whether Defendants breached a duty of due care in selling friable asbestos products for use in colleges.

8. Whether Defendants' conduct justifies the imposition of punitive damages.[20]

The Court will reserve a decision as to whether further certification of other issues or subclasses is required until completion of Phase One proceedings.

### IV. Other Pending Motions

Since the court has decided the motion for class certification, the court finds it appropriate to address some of the remaining pending motions.[21] The court notes that it has already touched upon a part of the issues that arise in regard to questions of jurisdiction and the need for discovery. Additional comments are added here in regard to some of the specific outstanding motions.

First, the court will address jurisdictional motions to dismiss. Two of the motions will be discussed together since both Defendants are Canadian and the same issue is addressed. The two motions to dismiss based on lack of personal jurisdiction were filed by Defendants Atlas Turner, Inc. (Doc. # 42) and Bell Asbestos Mines, Ltd. (Doc # 59). Related to those motions is a motion to compel jurisdictional discovery filed by the Plaintiff (Doc # 185).[22] The Plaintiff's motion to compel seeks an order under Fed.R.Civ.Pro. 37(a) compelling three Canadian Defendants to respond fully and completely to Plaintiff's jurisdictionally-relevant discovery requests. The Defendants involved here are Asbestos Corporation Ltd., Bell Asbestos Mines, Ltd., and Atlas

---

**20.** Since these inquiries are primarily factual, Defendants' arguments concerning the "laws of 50 states" do not prevent the limited certification. To the extent any subclasses under different state law are required, they will be addressed subsequently. Other courts have noted that variations in state law do not present insuperable obstacles to certification, even when such variations are encountered. *See In re School Asbestos Litigation,* 789 F.2d at 1010.

**21.** The court has been notified by telephone or by letter that several motions have been resolved or are now moot. Counsel for United States Gypsum has indicated that the motion to strike certain class allegations, filed August 7, 1987, [Doc # 23], is moot due to the dismissal of the *Clemson* case. Also, a letter in the court's file indicates that a motion to dismiss filed August 18, 1987, [Doc # 62], by Ohio Lime Com-

pany was previously withdrawn. In addition, Kaiser Gypsum has indicated by letter that its motion to compel, filed November 5, 1987, [Doc # 128], is moot until discovery begins; the court approves Kaiser Gypsum's request to allow the filing of another motion to compel at a later date should the need arise. Similarly, Plaintiff's counsel has indicated that its motion to compel, filed July 27, 1988, [Doc # 171], is also moot at this time. The court has notified its docketing clerk about the disposition of these matters.

**22.** This motion to compel was filed by the Plaintiff on November 14, 1988 (Doc # 185), and supersedes a prior motion to compel filed by the Plaintiff on August 8, 1988 (Doc # 171). The court's docketing clerk has been directed to mark the earlier motion (Doc # 171) as moot and superseded by the motion now before the court.

Turner, Inc., who shall be referred to as the "Canadian" Defendants.[23]

 The Plaintiff seeks potential jurisdictional information from the Defendants. The court is convinced at this time that the Plaintiff is not engaged in some frivolous fishing expedition in the sea of jurisdictional proof. *See, Segan v. Dreyfus Corp.*, 513 F.2d 695 (2nd Cir.1975) (discovery precluded where Plaintiff embarked on a fishing expedition). This court may compel discovery to aid its resolution of personal jurisdiction issues. *In re Uranium Antitrust Litigation*, 480 F.Supp. 1138 (N.D.Ill.1979). When the Plaintiff's claim does not appear to be frivolous, a district court should ordinarily allow discovery on jurisdiction in order to aid the Plaintiff in discharging the burden of establishing the court's jurisdiction. See, *Fraley v. Chesapeake & Ohio Railway Co.*, 397 F.2d 1 (3rd Cir.1968); see also, *Surpitski v. Hughes–Keenan Corporation*, 362 F.2d 254 (1st Cir.1966). As noted in the certification part of this order, the United States Supreme Court has also recognized the authority of district courts to permit discovery concerning the scope of the court's subject matter jurisdiction. *U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 108 S.Ct. 2268, 101 L.Ed.2d 69 (1988).

 Having determined that discovery is appropriate to the resolution of the issues presented in the defendants' motions to dismiss, the court next considers the application of the bar to discovery asserted by certain defendants. The Canadian Defendants rely on the Quebec Business Concerns Records Act ("QBCRA"), Que.Rev. Stat. ch. 278 (1964), as a prohibition to their responding to Plaintiff's discovery requests, asserting that they cannot provide the information or documents requested by Plaintiff without violating the QBCRA, and without subjecting themselves to criminal penalties.[24] Conversely, Plaintiff contends that a foreign "blocking" statute, or nondisclosure law, such as the QBCRA, neither diminishes the duty of a foreign Defendant to respond to discovery requests under Fed.R.Civ.Pro. 33(a) and 34(a), nor limits the power of this court to compel discovery under Rule 37. *See e.g., Societe Internationale v. Rogers*, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958).

The prohibition upon which Defendants rely is found in section 2 of the QBCRA, which provides that:

> no person shall, pursuant to or under any requirement issued by any legislative, judicial, or administrative authority outside the Province, remove or cause to be removed, or send or cause to be sent, from any place in the Province to a place outside the Province, any document or resume or digest of any document relating to any concern.

Que.Rev.Stat. ch. 278 § 2 (1964). This prohibition does not apply to the removal of documents to a principle office, affiliated company, or agency situated outside the province in the ordinary course of business. *Id.* at § 3. Section 4 of the Act empowers the provincial Attorney–General to apply for a court order precluding removal "[w]henever there is reason to believe that a requirement has been or is likely to be made for the removal or sending out of the Province of a document relating to a concern ..." *Id.* at § 4. The statute also provides for criminal penalties for the violation of judicial orders issued pursuant to section 4. *Id.* at § 5.

---

**23.** Although there are three Canadian defendants, only Bell Asbestos Mines Ltd. and Atlas Turner have filed motions to dismiss based on lack of personal jurisdiction. It appears that Asbestos Corporation, Ltd. has not filed a motion to dismiss.

**24.** Defendants Atlas Turner and Bell Asbestos Mines, Ltd., have submitted orders from the Canadian courts prohibiting the defendants from violating the QBCRA. Atlas Turner, Inc., submitted an order dated July 12, 1988, of the Provincial Court of Quebec, District of Montreal (No. 500–02–023591–881) and Bell Asbestos Mines, Ltd., submitted an order dated November 17, 1988, of the Provincial Court of Quebec, District of Frontenac (No. 235–02–000355–881). This court has considered these orders in analyzing this case, but finds that the existence of these orders does not affect the reasoning applied, as well as the conclusions reached, herein.

As noted by another court confronted with discovery objections predicated on the QBCRA, "[t]he exact reason for the Quebec legislation is not clear." *American Industrial Contracting, Inc. v. Johns–Mansville Corp.*, 326 F.Supp. 879, 880 (W.D.Pa.1971). "At first blush, it would seem its purpose is to require that a Quebec corporation keep its business records intact in the province." *Id.* Based on this construction, it is not evident to this court that compliance with plaintiff's demand would necessarily contravene the Quebec statute. *See Petruska v. Johns–Mansville*, 83 F.R.D. 32, 36 (E.D.Pa.1979).

In 1988, Judge Joe F. Anderson, Jr., was confronted with similar discovery objections in *Lyons v. Bell Asbestos Mines, Ltd.*, 119 F.R.D. 384 (D.S.C.1988). Judge Anderson held that the Defendants had failed to make an adequate showing that the QBCRA was applicable to the Plaintiff's discovery requests. Further, even assuming the QBCRA was applicable, Judge Anderson was not convinced that "the statute would be contravened by the production of photocopies outside Quebec or by the inspection of documents within Quebec." *Id.*, at 388. As to interrogatories, Judge Anderson held that answering the interrogatories would not entail the removal of documents or copies from Quebec. The circumstances in the case now before this court are similar to those in *Lyons*, and this court, agreeing with the analysis in *Lyons*, finds that Defendants have failed to make an adequate showing that the QBCRA is in fact applicable to Plaintiff's discovery requests in the instant case or would preclude any discovery as may be approved by this court.

In further support of its conclusion, the court in *Lyons* also held that, assuming the QBCRA was fully applicable to Plaintiff's discovery requests and that the intent of the statute was to completely bar the ex-traprovincial dissemination of all information and documents sought in Plaintiff's discovery requests, the statute did not diminish Defendant's obligations to respond to Plaintiff's discovery requests or limit the court's power to compel such responses. The court cited two reasons in reaching this conclusion. First, the legislative enactments of a provincial government such as Quebec are not entitled to comity under the principles of international law. "The province of Quebec is not a State within the meanings of the doctrines of international law. These doctrines only apply to nations in the international sense such as the United States and Canada." *American Industrial Contracting, Inc. v. Johns–Mansville Corp.*, 326 F.Supp. at 881. This court agrees and, therefore, finds that the QBCRA is not entitled to deferential consideration under the principles of international law.

Secondly, Judge Anderson held in *Lyons* that even if provincial statutes were accorded the deference normally paid to the laws of foreign sovereigns, the requirements of comity did not impel this court's acquiescence to the QBCRA's blanket proscription against discovery otherwise permitted by the Federal Rules of Civil Procedure. The QBCRA does not detract from the authority of this court to issue an order under Fed.R.Civ.Pro. 37(a) compelling Defendants to respond to Plaintiff's jurisdictionally-related requests[25]; otherwise, "[a]n anomalous situation with great potential effect would result from recognition of the right of a litigant to avoid discovery permitted by local law through the assertion of violation of foreign law. Foreign law may not control local law." *Arthur Anderson & Co. v. Finesilver*, 546 F.2d 338, 342 (10th Cir.1976). This Court's ruling is consistent with the previous holding in *Clemson University v. W.R. Grace &*

---

**25.** Defendants argue that they have not been served with any particular discovery requests. Plaintiff has responded that Judge Houck had ruled that the discovery in *Clemson University v. W.R. Grace & Co.*, No. 2:86–2055–2 (D.S.C. June 16, 1988) would be utilized in this case. Therefore, plaintiff's outstanding jurisdictional requests in the *Clemson* case, namely interrogatories and requests for production, would be the same discovery plaintiff is now seeking. Since there is some confusion, this court would like to clarify that defendants still have the right to make any objections, besides the one ruled on in this order, to plaintiff's specific discovery requests as such requests are made.

*Co.*, No. 2:86–2055–2, in which Judge Houck issued an order compelling discovery on June 24, 1988. Accordingly, Plaintiff's motion to compel is hereby granted. In light of this court's finding that certain jurisdictional discovery is appropriate, the Defendants Atlas Turner, Inc. and Bell Asbestos Mines, Ltd.'s motions to dismiss are denied at this time. The court believes that this jurisdictional discovery must occur before any ruling can be issued on the motions to dismiss, and that adjudication of the issues presented at this time would be premature. Once discovery is complete, the defendants may renew or file new motions to dismiss, or any other appropriate motions.

■■■ Pending before the Court also is a motion for summary judgment filed by Defendant United States Gypsum (Doc # 179). Although this Defendant forcefully argues that summary judgment is appropriate at this time, the Court is convinced, although the question is a close one, that this motion should not be resolved until discovery, especially in regard to product identification, has been completed in this case. The Court is even more convinced of this conclusion in light of the conspiracy allegations made by the Plaintiff. The allegations made by the Plaintiff in this regard are not frivolous on the face of the complaint, nor does the Court feel that the allegations are of such a nature that the court would be inclined to adjudicate the issue presented on a motion to dismiss. The Court has already indicated that the record is not complete concerning the existence or contours of such a conspiracy. Since this court does not feel

that this is an issue it would dismiss on the pleadings, the Court is not prepared to grant summary judgment on the issues presented prior to completion of discovery. Because the conspiracy allegations are not dismissed herein, and because the Court feels that since the other matters raised by the Defendant's motion present a close question of law, summary judgment would be inappropriate prior to completion of discovery. This is especially true in view of the uncertain posture that any claims against this Defendant may now have as a result of this court's approval of class certification. Accordingly, Defendant United States Gypsum's motion for summary judgment is denied at this time with leave to file a subsequent motion upon completion of discovery.[26]

Finally, Defendant Kaiser Gypsum has also filed a motion to dismiss in combination with its motion to deny class certification (Doc # 87). In the Plaintiff's response to this motion, the Plaintiff states that the *motion is not ripe for decision because* Judge Houck had previously issued an order in this case restricting merits discovery until after the class certification issue had been decided. The Defendant raises many arguments and has filed five briefs in support of those arguments. This court has already addressed some of Defendant's arguments in the certification section of this order.[27] One of the many issues that this Defendant has raised is the statute of limitations defense, which this court finds will require factual discovery as to each Plaintiff.[28] Because this Court order has grant-

---

26. Similarly, the court is not prepared to grant the motion to dismiss (Doc # 9) by Turner & Newall, PLC.; TAF International, Ltd.; Turner Asbestos Fibers, Ltd.; and J.W. Roberts, Ltd. These defendants are referred to as the "English defendants". The court has reviewed a letter between counsel for plaintiff and counsel for the "English defendants" in the *Clemson* case, which has been made a part of this case, and in which counsel agreed that the motion should be resolved once discovery has taken place. Even without consideration of this letter, the court, for reasons similar to those cited herein about the need for jurisdictional discovery, would deny the motion. Accordingly, this motion is also denied with leave to renew once discovery is completed.

27. Those issues include: subject matter jurisdiction, product identification, and conspiracy allegations.

28. Various approaches have been used when evaluating the statute of limitations defense. When *Cimino v. Raymark Industries, Inc.*, 751 F.Supp. 649 (E.D.Tex.1990) finally went to trial in July 1990, Judge Parker deferred all statute of limitations defenses to postverdict motions. Also, during the pretrial proceedings in *In Re School Asbestos Litigation*, No. 83–0268 (E.D.Pa. filed Jan. 17, 1983) Judge Kelly considered the statute of limitations defenses on a motion-by-motion basis. *See* "Linda S. Mullenix, *Beyond Consolidation: Post-Aggregative Procedure in As-*

ed class certification, many of the issues raised by the Defendant will require factual discovery to determine the effect of the validity of the arguments presented, as well as the applicability thereof, to each member of the class, and adjudication of this motion to dismiss would be premature at this time. Accordingly, this motion is also denied, with leave to renew once discovery has been completed.

### "CERTAINTEED SETTLEMENT"

The Plaintiff has also filed a motion for preliminary approval of a class settlement as to Defendant Certainteed Corporation. This Court has reviewed the proceedings and discussions relating to this matter, Judge Houck's comments and expression of approval, as well as those briefs and letters submitted by counsel to the court. The court agrees with Judge Houck's initial thoughts that there appears to be no reason to delay the granting of this motion, especially in recognition of the fact that this order merely serves as this Court's tentative approval of this matter, and will allow the initiation of proceedings that will enable this court to finally adjudicate the appropriateness and fairness of this settlement. In addition, this Court does not believe that any prejudice will result to the other Defendants from this preliminary approval at this time. Accordingly, the Plaintiff's motion for preliminary approval of this class settlement is hereby granted; however, any further proceedings by the Plaintiff in regard to the "Certainteed Settlement" are hereby stayed until the court can schedule a status conference to discuss various issues, such as the form of notice, which may arise with the preliminary approval granted herein.

### SUMMARY

In summary, Plaintiff's motion for certification of a class is hereby conditionally granted in accordance with the provisions of this order. All of the pending motions to dismiss, as well as the pending motion for summary judgment, are hereby denied with leave to file renewed or supplemental motions at appropriate stages of this case upon completion of relevant discovery. Plaintiff's motion to compel is also granted as indicated.

Counsel are directed to meet within 45 days for the purpose of proposing a plan for the orderly resolution of Phase One discovery as discussed herein. If a proposed agreement cannot be reached, counsel should contact the Court so that a scheduling conference may be set. Counsel are further directed, after an initial draft is prepared by Plaintiff, to discuss the proposed form of notice in regard to the "Certainteed Settlement" as well as those other issues of concern raised by the defendants in regard to steps that this court should take to finalize that settlement. If additional time is needed to accomplish these matters, counsel are requested to advise this court. Consent orders in all matters herein involved are encouraged by the court.

IT IS FURTHER ORDERED, since this decision involves controlling questions of law as to which there are substantial grounds for difference of opinion, and immediate appeal from this order may materially advance the ultimate termination of this litigation, that the parties are hereby granted the right to seek immediate relief, if they be so advised, in the Court of Appeals for the Fourth Circuit, pursuant to 28 U.S.C. § 1292(b); all further proceedings in this court are hereby stayed until the time for seeking an immediate appeal pursuant to this order has expired and no such appeal has been sought, or until such time as the Fourth Circuit Court of Appeals refuses to accept this matter for interlocutory appeal, or until such time as the Fourth Circuit Court of Appeals has ruled on the issues presented herein upon acceptance of an appeal.

IT IS SO ORDERED.