In re Sigmund ROSS, Debtor.

Owen W. MOORE, Letitia E. Moore, et al., Plaintiffs-Appellants,

v.

Sigmund ROSS and Charlotte Ross, Defendants-Appellees.

BAP No. NC–82–1313–GEAs.

Bankruptcy No. 581–02788–M.

Adv. No. 820047.

United States Bankruptcy Appellate Panels of the Ninth Circuit

Argued June 23, 1983.

Decided March 22, 1984.

Barbara L. Spector, Morgan, Morgan, Towery, Morgan & Spector, San Jose, Cal., for appellant.

Maureen M. Alexander, Campeau & Grube, San Jose, Cal., for appellee.

Before GEORGE, ELLIOTT and ASHLAND, Bankruptcy Judges.

## OPINION

GEORGE, Bankruptcy Judge:

Appeal is taken herein from an order of the trial court granting the defendants' motion for a judgment on the pleadings. We affirm.

## I. BACKGROUND

Prior to the commencement of the above-entitled case, the appellants, OWEN W. MOORE and LETITIA E. MOORE, were the certified representatives of a class in a California Superior Court action brought against the appellees, SIGMUND ROSS and CHARLOTTE ROSS, and an entity known as CALIFORNIA HOME DECOR, INC. ("HOME DECOR"). On June 17, 1981, a judgment was entered against Mr. Ross and Home Decor in the amount of $176,850.00, plus costs of $494.71, based upon findings and conclusions of false representation, breach of contract, breach of warranties, and the violation of various California consumer protection statutes.

On August 18, 1981, the appellees filed a voluntary petition under Chapter 13 of the Bankruptcy Code. On August 28, 1981, the appellants and another creditor filed an involuntary Chapter 7 petition against the debtors. Thereafter, on November 23, 1981, the debtors converted their Chapter 13 case to a case under Chapter 7.

Subsequent to the appellees' conversion to Chapter 7, on January 12, 1982, the appellants filed a complaint, "on behalf of themselves and all others similarly situated," to determine the dischargeability of the debt owed under the June 17, 1981 Superior Court judgment. In response, the appellees moved for a judgment on the pleadings, alleging that the appellants lacked the "capacity" to bring the bankruptcy dischargeability complaint, on behalf of the class they had represented in the state court action. Shortly thereafter, the appellants moved for summary judgment, largely on the basis of the findings, conclusions and judgment of the California Superior Court.

At the hearing held on these opposing motions, the trial court determined that the appellants had improperly complained, on behalf of their state action class, without complying with Rule 200–6 of the Local Rules for the United States District Courts for the Northern District of California. Rule 200–6 governs the filing of class actions under Fed.R.Civ.P. 23. Given this determination, the trial court declined to rule upon the appellants' summary judgment motion. Nevertheless, the court's order granted leave for the appellants to file an amended complaint, comporting with the federal class action rules.

This appeal followed the entry of the trial court's formal order on April 27, 1982.

## II. ANALYSIS OF THE ISSUES OF FACT AND LAW

Principal among the appellants' arguments are their assertions that 1) the state action class was a "juristic person," which they could properly represent in all bankruptcy court proceedings, see Fed.R.Civ.P. 17(b) & Fed.R.Bankr.P. 717 (now Fed.R.Bankr.P. 7017), and 2) the appellees were collaterally estopped from contesting the certification of the state action class and the appellants' right to represent that class.

The lower court's decision appears to have been based solely upon its belief that no class existed to permit the filing of the appellants' representative dischargeability complaint. Therefore, the court below did not address any issues relating to whether, upon a proper request by the appellants, a class should have been certified and an action maintained on its behalf. Discussion, at this time, of the collateral estoppel issues would, thus, seem premature.

■ Rather, the panel must concern itself with the question of whether a class, created to pursue a non-bankruptcy action, remains a class for purposes of a subsequent dischargeability action in bankruptcy. We hold that it does not.

The problem here is, largely, one of limitations. As the appellants argue, upon certification, a class does partake of some of the characteristics of an entity, in that it may sue and be sued by and through its representatives. Unlike most other entities created by law, however, the class has procedural, rather than substantive, origins. It owes its existence to the perceived need for party consolidation in order to expedite litigation that would otherwise involve burdensome and conflicting individual suits.

Given this procedural basis, the creation of a class relates solely to a single common litigational event. All actions taken on behalf of the class must relate to that litigation and, upon the conclusion thereof, the class ceases to exist.

The class, itself, is defined in terms of the facts and the law underlying the specific litigation it is certified to pursue. "Whether a class exists is a question of fact that will be determined on the basis of the circumstances of each case." 7 C. Wright & A. Miller, Federal Practice and Procedure § 1760, at 579 (1972).

■ Also, because of the procedural nature of the class action, its use in federal courts is dependent upon federal, rather than state, law. This is true even where the action appears in federal court only upon the basis of diversity. *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). Of course, once the class entity has been created under the federal rules of procedure, state law may define the capacity of the class representatives to sue and to be sued. Fed.R.Civ.P. 17(b). *See also* 7 C. Wright & A. Miller, *supra* § 1758, at 572.

Although the factual circumstances underlying a complaint objecting to the dischargeability of a debt are generally the same as those which gave rise to the original debt claim, the two do not represent the same cause of action. The latter alleges only that a debt is owing; the former establishes the debtor's right to a federal statutory limitation on the collection of that debt. Each involves independent applications of law and assessments of the facts relating to that law.

For example, a judgment debt resulting from a class action claim of constructive fraud would rely upon a different aspect of the factual record and a separate legal standard from a complaint objecting to discharge on the basis of actual fraud. Therefore, a commonality of questions of fact, among the claims of class members, might be present in the constructive fraud action, but not in the action under 11 U.S.C. § 523(a)(2)(A). Moreover, the representatives of the non-bankruptcy class may, in an action under 11 U.S.C. § 523, no longer hold claims and defenses typical of the class as a whole.

## III. CONCLUSION

In light of this distinction between the cause of action which gave rise to the appellants' claim and that which would potentially make that claim nondischargeable, we conclude that they do not represent the same litigation for purposes of class certification. In the present adversary proceeding, therefore, there was no proper class before the trial court to pursue a nondischargeability complaint against the debtors. Hence, the trial court did not err in granting the appellees' motion for a judgment on the pleadings.

As we noted earlier, the collateral estoppel issue should be more appropriately raised upon the request for class certification by the appellants. The same can be said for the various policy arguments raised by the parties as to the equitableness and efficiency of the class device in determining its use in litigating the dischargeability of the instant claim. We leave it to the trial court to resolve each of these concerns.

AFFIRMED.