**In re the CELOTEX CORPORATION, Debtor.**

**Southern Wesleyan University, et al., Plaintiffs,**

**v.**

**Frank Andrews, Sharon M. Meadows, James W. Stevens, and The Celotex Asbestos Settlement Trust, Defendants.**

**Bankruptcy No. 8:90–bk–10016–PMG. Adversary No. 8:09–ap–558–PMG.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

April 6, 2010.

---

Edward J. Peterson, III, Stichter, Riedel, Blain & Prosser, PA, Tampa, FL, for Plaintiffs.

Jeffrey W. Warren, Karen Cox, Bush Ross, P.A., Tampa, FL, Stephen D. Busey, Smith Hulsey & Busey, Jacksonville, FL, for Defendants.

### ORDER ON MOTION TO DISMISS THE FIRST AMENDED AND RESTATED COMPLAINT

PAUL M. GLENN, Chief Bankruptcy Judge.

**THIS CASE** came before the Court for hearing to consider the Motion to Dismiss

the First Amended and Restated Complaint. The Motion to Dismiss was filed by The Celotex Asbestos Settlement Trust and its Trustees, Frank Andrews, Sharon M. Meadows, and James W. Stevens (the Defendants).

Thirty-seven colleges or universities (the Plaintiffs) initially filed the Complaint that commenced this adversary proceeding. Generally, the Plaintiffs alleged that the Defendants breached the fiduciary duties owed to them in connection with certain Property Damage claims that had been asserted in this case.

The Plaintiff, Southern Wesleyan University (Wesleyan), subsequently filed a First Amended and Restated Complaint, "as the representative for the certified college class members" described in the Amended Complaint.

In the Motion to Dismiss the First Amended and Restated Complaint, the Defendants contend that Wesleyan lacks standing to represent the colleges and universities that are named as claimants in the Amended Complaint, and that Wesleyan failed to allege that it is a Property Damage claimant within the meaning of the Defendants' trust documents.

## I. The preserved claims

The Celotex Corporation was engaged in the business of manufacturing, marketing, and distributing building products. Carey Canada Inc. was engaged in the business of asbestos mining until it ceased operations in 1986.

Celotex and Carey Canada filed petitions under Chapter 11 of the Bankruptcy Code on October 12, 1990. At the time that the petitions were filed, Celotex and Carey Canada had been named as defendants in thousands of lawsuits filed by Asbestos Personal Injury Claimants, and in hundreds of lawsuits filed by Asbestos Property Damage Claimants.

On December 6, 1996, the Court entered an Order Confirming the Modified Joint Plan of Reorganization for Celotex and Carey Canada.

A principal feature of the confirmed Plan is the creation of the Asbestos Settlement Trust. "The Plan establishes a Trust to address, liquidate, resolve, and disallow or allow and pay Asbestos Claims, which will operate in accordance with the Asbestos Claims Resolution Procedures." *In re The Celotex Corporation*, 204 B.R. 586, 602 (Bankr.M.D.Fla.1996).

The Trust Agreement provides that the Trust will be administered by designated Trustees. The Trust Agreement further provides:

> The Trustees are and shall act as fiduciaries to the Trust in accordance with the provisions of this Trust Agreement and the Plan. The Trustees shall, at all times, administer the Trust and the Trust Assets in a manner consistent with 11 U.S.C. § 524(g) to provide reasonable assurance that the Trust will value, and be in a financial position to pay, Asbestos Claims and Demands that involve similar claims in substantially the same manner and to maximize the value of the Trust Assets.

(Trust Agreement, § 3.1(a)).

In connection with the general administration of the Trust, the Trust Agreement requires the filing of an annual report following the end of each fiscal year. The annual report is required to contain audited "financial statements of the Trust (including, without limitation, a balance sheet of the Trust as of the end of such fiscal year and a statement of operations for such fiscal year)." The Trust Agreement also provides that, simultaneously with the filing of the audited financial statements, a report shall be filed that contains "a summary regarding the number and type of claims disposed of during the period cov-

ered by the financial statements." (Trust Agreement, §§ 3.2(c)(i), (ii)). Finally, the Trust Agreement provides:

**5.12 Settlement of Trustees' Accounts** .... The Trustees shall render successive accounts covering periods ending at the end of each calendar year consisting of the filings required by Article 3.2(c) of this Trust Agreement.... Upon the approval of any such periodic account by the Bankruptcy Court after hearing on notice to the Approving Entities and such other parties as the Bankruptcy Court may designate, and subject to the terms of the order of the Bankruptcy Court granting such approval, *the Trustees shall be discharged from any further liability or responsibility as to all matters disclosed in such periodic account, and an action against a trustee for breach of trust arising out of any matter disclosed in such periodic account shall be barred as provided in Fla. Stat. Ann. § 737.307.*

(Trust Agreement, § 5.12)(Emphasis supplied).

The Trust has filed an Annual Report, and a corresponding Application for approval of the Annual Report, for each fiscal year since the Modified Joint Plan was confirmed. With respect to the Reports for the fiscal years through 2000, each of the Orders approving the Reports contained a general release of the Trustees in accordance with § 5.12 of the Trust Agreement. Pursuant to the general releases, the Trustees were released and discharged from "any and all liability as to all matters embraced in the Application, the Annual Report, the Materials (including, without limitation, the financial statement of the Trust), and the Account." (See Main Case Doc. 12830).

The Order approving the Annual Report for 2001 also released and discharged the Trustees as to all matters contained in the 2001 Report, as authorized by the Trust Agreement. The Order approving the 2001 Report, however, contained a "carve-out" from the general release with respect to certain "Disputed Claims" as defined in the Order. Specifically, the Order provided that:

[U]pon the Trust's determination that all of the issues regarding *an Asbestos Property Damage Claim, which was not paid or settled by the Trust as of December 31, 2001 ("Disputed Claim"),* are resolved either consensually or by final, non-appealable order of the Court, the Trust shall provide notice of such determination to all interested parties and file the notice with the Court (the "Notice"). The Notice shall include a statement indicating *it is the position of the Trust that an interested party has six (6) months from the date of the Notice to bring an action or claim against the trustees arising out of or related to the trustees' decision to withhold payment of the Disputed Claim.*

(Main Case Doc. 13222)(Emphasis supplied). The Orders approving the 2002, 2003, 2004, 2005, and 2006 Annual Reports also contained provisions regarding the notice period for bringing an action related to Disputed Claims. (Main Case Docs. 13280, 13729, 13730, 13731, 13855).

The Order approving the Annual Report for 2007 was entered on February 5, 2009. (Main Case Doc. 13992). Paragraph 8 of the Order provides:

8. The orders by which this Court approved the Trust's Annual Reports for 2001 through 2006 and related Materials and accounts (the "Prior Orders") each contained *a "carve out" pertaining to the rights of persons who held asbestos property damage ("PD") claims that had been allowed by the Property Damage Claims Administrator but that the Trust had not promptly paid (the "Disputed PD Claims").* Subject to any de-

fenses and time bars that had already accrued by the time such Prior Orders were entered, the "carve out" provisions preserved any claims against the trustees arising from or relating to the Disputed PD Claims (the "Additional Claims"), and suspended the running of any applicable statue [sic] of limitations with respect to such Additional Claims. Like many tolling agreements, however, the "carve out" provisions of the Prior Orders can be terminated on a prospective basis and thereby trigger resumption of the running of any unexpired periods of limitation or repose.

(Main Case Doc. 13992, p. 3)(Emphasis supplied). In the Application for approval of the 2007 Annual Report, the Trust had asked the Court to terminate the "carve out" provisions related to Disputed Claims, and to establish a Bar Date for the assertion of such claims. Consequently, the Order Approving the 2007 Annual Report also provided:

> [I]n the exercise of the Court's equitable power to oversee the administration of the Trust, and of the Court's inherent power to control its docket, *the Court hereby establishes a Bar Date for the filing of any and all Additional Claims against the trustees, that is, any and all claims arising from or relating to PD Claims that were allowed by the Property Damage Claims Administrator but not promptly paid by the Trust.* The Bar Date shall be the date that falls 180 days after service of the Notice.

(Main Case Doc. 13992, p. 6)(Emphasis supplied).

On February 10, 2009, a Notice Regarding Bar Date for Additional Claims was served on all interested parties. (Main Case Doc. 13994). The Notice provided:

> Finally, you are hereby notified that the Court has established a Bar Date for the filing of any and all Additional Claims against the trustees, that is, *any and all claims arising from or relating to PD Claims that were allowed by the Property Damage Claims Administrator but not promptly paid by the Trust.* **The Bar Date is August 12, 2009.** Any and all claims that are subject to the Bar Date but not filed on or before the Bar Date shall be forever barred.

(Main Case Doc. 13994, Notice p. 3)(Emphasis supplied).

Based on the documents discussed above, it is clear that the Trust and the Trustees were released and discharged from any and all liability for actions that they took regarding the matters presented in the Annual Reports and related materials through the year 2000. The Trust Agreement authorized such a release, and the Orders approving the Annual Reports through the year 2000 expressly granted the release.

Beginning with the Order approving the 2001 Annual Report, however, the Court approved a carve-out from the release for certain claims against the Trust. The claims that were preserved, however, were specifically limited to "the rights of persons who held asbestos property damage ("PD") claims that had been allowed by the Property Damage Claims Administrator but that the Trust had not promptly paid (the "Disputed PD Claims")." (Main Case Doc. 13992, p. 3). No other exceptions to the general release and discharge were provided by the Orders approving the Annual Reports for 2001 through 2007.

## II. Southern Wesleyan University

On August 10, 2009, thirty-seven named Plaintiffs filed a Complaint against the Trust and the Trustees. (Doc. 1). The Plaintiffs included Southern Wesleyan University, "a resident and citizen of South Carolina and the named representative in a class action on behalf of the nation's colleges and universities, including all oth-

er claimants herein, which was certified by the United States District Court for the District of South Carolina and affirmed by the United States Court of Appeals for the Fourth Circuit." (Doc. 1. p. 2). The Complaint contained a single Count against the Defendants for breach of fiduciary duty.

On October 21, 2009, a First Amended and Restated Complaint was filed by "Southern Wesleyan University f/k/a Central Wesleyan College, as the representative for the certified college class members" described in the Amended Complaint. (Doc. 23).

Southern Wesleyan University (Wesleyan) asserts that its status as class representative is based on the decision of the United States District Court in *Central Wesleyan College v. W.R. Grace & Co.*, 143 F.R.D. 628 (D.S.C.1992)(the National Universities Class Action). The National Universities Class Action was initially commenced in 1987 "on behalf of all colleges and universities in the nation to recover their costs of finding, sampling, evaluating and dealing with asbestos in their buildings." The National Universities Class Action sought to recover those costs from multiple defendants consisting of "the asbestos miners, millers and manufacturers involved in the chain of distribution for asbestos products in these buildings." *Central Wesleyan College v. W.R. Grace & Co.*, 143 F.R.D. at 630. Celotex and Carey Canada were included among the producers and manufacturers named as defendants in the National Universities Class Action.

In the National Universities Class Action, Wesleyan filed a motion for certification of a class "to unite the claims of the colleges and universities against this distribution chain." *Id.* In response to the motion for certification, the defendants in the National Universities Class Action asserted that they had not all performed the same testing, warning, or marketing strat-egies for their asbestos products, so that no common issues of fact existed among the proposed class members. *Id.* at 636. Additionally, the defendants asserted that Wesleyan should not be permitted to represent the proposed class because it had not shown that it had the asbestos products of each of the defendants in its buildings. *Id.* at 637–38.

The District Court entered an Order on the motion for class certification in 1992. The Order provided:

> After considering all of the factors, the court has determined to exercise its discretion under Fed.R.Civ.P. 23(c)(1) *to certify conditionally certain issues for a Phase One certification procedure.* Pursuant to Fed.R.Civ.P. 23(d)(1), permitting this Court to make appropriate orders concerning the "course of proceedings," the Court has determined the case will proceed with discovery and presentation of evidence on the common issues defined below....
>
> As part of the Phase One proceedings, the court will permit Plaintiff's counsel to conduct "product identification" discovery against all Defendants aimed at determining which colleges or universities have Defendants' asbestos containing products or asbestos.... *The Court will defer a final decision on the standing of Central Wesleyan or any additional class Plaintiffs to represent the class against each of the Defendants until after conclusion of the product identification discovery.*

*Id.* at 642(Emphasis supplied). The eight common issues to be addressed in the Phase One proceedings involved (1) whether the defendants knew about the health hazards of asbestos, (2) whether the defendants' products were friable, (3) whether the defendants' products released asbestos fiber, (4) whether the defendants engaged in a conspiracy, (5) whether the defendants

adequately tested their products, (6) whether the defendants provided warning of the potential hazards, (7) whether the sale of the products breached a duty of care, and (8) whether punitive damages were warranted. *Id.* at 643.

In summary, the District Court conditionally certified the proposed class solely for purposes of allowing discovery to proceed on eight defined issues. The District Court deferred ruling on the issue of whether Wesleyan had standing to represent the proposed class.

A number of defendants in the National Universities Class Action appealed the District Court's Order to the Fourth Circuit Court of Appeals. The Fourth Circuit viewed the issue on appeal as "whether conditional class certification was appropriate in a suit brought against a group of asbestos producers on behalf of those colleges and universities with friable asbestos in their buildings." *Central Wesleyan College v. W.R. Grace & Co., et al.*, 6 F.3d 177, 180 (4th Cir.1993).

The Fourth Circuit ultimately determined that the District Court had not abused its discretion in conditionally certifying the class for limited Phase One discovery, or in postponing the decision on Wesleyan's standing until discovery was complete. *Central Wesleyan College v. W.R. Grace & Co., et al.*, 6 F.3d at 186–87. In affirming the District Court's Order, it is significant that the Fourth Circuit emphasized the "tentative, limited nature of the conditional certification." 6 F.3d at 186. In other words, the Fourth Circuit found that the Order was appropriate in large part because of the manner in which the District Court had "proceeded with caution in its conditional certification order," by taking the "limited step" of conditionally certifying the class only for purposes of discovery on eight specific issues. *Id.* at 186, 190.

Further, the defendants had continued to assert on appeal that Wesleyan had "thus far identified only National Gypsum products in its facilities," and therefore lacked standing to bring claims against all of the defendants as class representative. *Id.* at 187. The Fourth Circuit noted that the District Court's findings regarding standing and typicality were only for "the purposes of conditional certification," and that it had reserved "a final decision on the appropriate representative(s) until after the 'product identification' phase of discovery is completed." *Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d at 183 (quoting 143 F.R.D. at 638). In other words, "[u]ntil it could be determined which colleges and universities had buildings containing which defendants' products, the district court deferred 'a final decision on the standing of Central Wesleyan or any additional class Plaintiffs to represent the class against each of the Defendants until after conclusion of product identification discovery.'" 6 F.3d. at 184 (quoting 143 F.R.D. at 642).

The Fourth Circuit did not determine that Wesleyan possessed standing to pursue the claims as class representative. It only determined that "it was not an abuse of discretion for the district court to withhold a ruling on questions of standing until it had a complete record before it." 6 F.3d at 188.

### III. The Celotex Property Damage Claim

Celotex and Carey Canada filed petitions under Chapter 11 of the Bankruptcy Code on October 12, 1990, while the National Universities Class Action was pending in South Carolina.

On April 21, 1993, the Court in the Debtors' Chapter 11 case entered an Order Granting Motion of Debtors for an Order Establishing Bar Date, Approving

Notice of Bar Date, and Approving Proof of Claim Form for Certain Asbestos Property Damage Claims. (Main Case Doc. 1983)(the Bar Date Order).

The Bar Date Order provides that "the class representative" in the National Universities Class Action "may file class proofs of claim on behalf of the members of the classes that they represent." (Main Case Doc. 1983, pp. 3–4). The Bar Date Order further provides that members of the National Universities Class Action need not file an individual Proof of Claim if a class proof of claim is filed for the class. (Main Case Doc. 1983, p. 4).

In accordance with the Bar Date Order, the Debtor served all known Asbestos Property Damage Claimants with a Notice of Last Day to File Proofs of Claim. The Notice provided, among other matters, that the National Universities Class Action "was conditionally certified as a class action" by the District Court in South Carolina, and that the order of conditional certification was on appeal to the Fourth Circuit at that time. The Notice also provided:

PLEASE TAKE NOTICE THAT A CLASS PROOF OF CLAIM FOR THE NATIONAL UNIVERSITIES CLASS AND THE FEDERAL LESSORS CLASS ACTION WILL BE AUTHORIZED. MEMBERS OF THE NATIONAL UNIVERSITIES CLASS ACTION AND THE FEDERAL LESSORS CLASS ACTION WHICH HOLD AN ASBESTOS PROPERTY DAMAGE CLAIM AGAINST CELOTEX OR CAREY CANADA MAY RELY ON *A CLASS REPRESENTATIVE* TO FILE A PROOF OF CLAIM ON BEHALF OF THE CLASS.

(Main Case Doc. 1983, Exhibit B, pp. 18–19)(Emphasis supplied).

Neither the Bar Date Order nor the Notice of the Bar Date identifies Wesleyan as the class representative in the National Universities Class Action. Although the Order and Notice indicate that a class proof of claim is authorized, the Order and Notice do not recognize Wesleyan as the "class representative" authorized to file it.

On July 29, 2003, an Asbestos Property Damage Proof of Claim was filed in the Chapter 11 case on behalf of the "National Universities Class Action." (Claim Number 7653). In the space for "Name and Address of Creditor," the creditor is identified as "National Universities Class Action," with a reference to Attachment "D." Attachment "D" consists of the following notation:

National Universities Class Action (Per Court order of April 21, 1993) by its authorized agent:

Edward J. Westbrook, Esquire
Ness, Motley, Loadholt, Richardson & Poole
Post Office Box 1137
Charleston, South Carolina 29402

Wesleyan is not identified on the face of the Proof of Claim, or in Attachment "D," as the class representative asserting the claim.

Part C of the Asbestos Property Damage Proof of Claim form asks the claimant (1) to identify the buildings for which the Claim was filed; and (2) to indicate the asbestos-containing material (ACM) allegedly found in each building. The information was requested in the proofs of claim pursuant to Section IV.D.1 of the Asbestos Property Damage Claims Resolution Procedures, which provides that every claim must include, among other documentation, documents "evidencing that Celotex ACM was used in the building or structure for which the Claim is made." APDCRP, § IV.D.1.(iii).

In response to the request for information, the Claim filed by the National Uni-

versities Class Action refers to Attachments A and B.

Attachment A is a statement by Edward J. Westbrook, Esquire (Westbrook), that he is authorized to represent the class membership. Westbrook states that he is counsel "in this bankruptcy proceeding for the named class representative and the unnamed members of the certified class who assert claims against the members of the asbestos industry including Celotex and Carey–Canada in *Central Wesleyan College v. W.R. Grace, et al.,* No. 87–1860–2 (D.S.C.), pending in the District of South Carolina since July 17, 1987." He further states that the "class representative claimant" is Wesleyan.

Attachment B is a statement that the "specific type of material, manufacturer, dates of construction, and status of removal and remediation, of each Class member will subsequently be provided as such evidence is acquired."

The Property Damage Claims Administrator (PDCA) processed the Claim filed on behalf of the National Universities Class Action in accordance with the Asbestos Property Damage Claims Resolution Procedures. Generally, it appears that each building identified by the claimant was assigned a separate Claim Number. The claim based on Celotex ACM found in Terrace Hall at Kent State University was assigned Claim Number 457–KS03–001, for example, and the claim based on Celotex ACM found in the Fishburne Library at Hollins College was assigned Claim Number 457–HO01–001. (Doc. 47, Exhibits D, E).

The PDCA separately evaluated the claims based on each building to determine whether all of the documentation required by Section IV.D.1 of the APDCRP had been furnished. "Once all of the necessary documentation pertinent to a Claim is received, the Property Damage Facility will determine whether the Claim will be allowed." APDCRP, § IV.E.2.

If the PDCA allowed a claim based on Celotex ACM contained in a specific building, a Notice of Final Determination was sent to the claimant. The Notice of Final Determination identified the claim by the claimant's name, the claim number assigned according to building, and the building name. The Notice also set forth the abatement cost for each building. Finally, the Notice stated that acceptance of the allowed costs must be filed with the PDCA to "trigger the PDCA's notice to the Trust of the allowance" of the claim.

With respect to the two claims described above, for example, the PDCA allowed the claims based on Celotex ACM in Terrace Hall at Kent State University, and Fishburne Library at Hollins College, and sent Notices of Final Determination to the claimant. In the first example, the claimant is identified on the Notice as "National Univs. Class Action," the Claim Number is 457–KS03–001, and the building name is "Terrace Hall—Kent State University." The allowed cost was $1,980,000.00. (Doc. 47, Exhibit D). In the second example, the claimant is identified on the Notice as "National Univs. Class Action," the Claim Number is 457–HO01–001, and the building name is "Fishburne Library—Hollins College." The allowed cost was $900,622.80. (Doc. 47, Exhibit E).

The allowed costs were accepted, and the Notices were signed by Edward B. Cottingham, Jr., an attorney in Westbrook's law firm, as Claimant Representative. (Doc. 47, Exhibits D, E).

Wesleyan does not appear on the Notices of Final Determination either as the Claimant or the class representative of the Claimant, and the allowed costs were not accepted by Wesleyan as the class representative of the Claimant. Instead, the Claimant is consistently identified as the

National Universities Class Action, the Claim Number is the number assigned to the particular building containing the Celotex ACM, and the "claimant representative" is the attorney who filed the Asbestos Property Damage claim on behalf of the National Universities Class Action. See also Doc. 47, Exhibit F, which consists of similar documents regarding Claim Number 457–FU01–001 for Bannow Science Center at Fairfield University.

The record in this proceeding does not include any Notice of Final Determination showing allowed costs for a building owned by Wesleyan.

In any event, if the allowed costs were accepted by the claimant, the PDCA submitted the claim to the Trust for payment. When the Trust paid the allowed claims, the Executive Director of the Trust sent the settlement checks to the attorney who filed the National Universities Class Action Claim, accompanied by a transmittal letter. The transmittal letters stated that the checks represented payment of "those specific property damage claims of the National University [sic] Class Action" listed on the check or attachment.

On October 17, 2003, for example, the Trust sent a check dated September 25, 2003, to Westbrook. The check was made payable to Westbrook's law firm in the amount of $369,836.89. The breakdown that accompanied the check reflects that the total payment is based on the allowed costs for four specific buildings with assigned claim numbers:

National University Class Action; Claim No. 457–FU01–001—$276,544.59
National University Class Action; Claim No. 457–KE03–001—$7,152.51
National University Class Action; Claim No. KS07–001—$54,123.19
National University Class Action; Claim No. 457–PR01–001—$32,016.60

Neither the check nor the transmittal letter referred to Wesleyan as the representative of the class. On the contrary, the check was issued to the attorney who filed the claim on behalf of the National Universities Class Action. The amount of the check represented the amounts that had been allowed for specific buildings at specific universities.

The record in this proceeding does not include any settlement checks or transmittal letters showing payment of a claim based on a building owned by Wesleyan.

Finally, in those instances in which the Trust declined to pay claims that had been allowed by the PDCA, the Trust sent a letter to the attorney who filed the claim, setting forth the procedure for resolving the Trust's objection to the claim. In a letter that was sent to Westbrook on May 13, 2002, for example, the Claimant was identified as the National Universities Class Action, the building was identified as the Bauer Center at Claremont University Center, and the claim number was the number that was assigned to the building (457–CC01–001). (Doc. 47, Exhibit G).

Wesleyan does not appear in the letter as the class representative for the claimant. Additionally, the record in this proceeding does not include any letters sent to Westbrook regarding unpaid claims related to buildings owned by Wesleyan.

## IV.  Application

■ The primary issue before the Court is whether Wesleyan, as "class representative," has standing to bring this action for breach of fiduciary duty against the Trust and Trustees. The Court finds that it does not.

■ The doctrine of standing arises from Article III of the United States Constitution as a component of the case or controversy requirement.

"In its constitutional dimension, standing imports justiciability: whether the

plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Article III". *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). Essentially, "the question is whether the person whose standing is challenged is a proper party to request an adjudication o[f] a particular issue and not whether the issue itself is justiciable". *Flast v. Cohen*, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968). Plaintiffs in federal courts must have a "personal stake in the outcome" of the case, *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962), and "must allege some threatened or actual injury resulting from the putatively illegal action". *Linda R.S. v. Richard D.*, 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973).

*E.F. Hutton & Co., Inc., v. Hadley*, 901 F.2d 979, 984 (11th Cir.1990). When standing has been contested, it is the burden of the party claiming standing to show that the constitutional requirements were satisfied. *E.F. Hutton & Co., Inc., v. Hadley*, 901 F.2d at 984.

In this case, the Complaint was filed as an action for breach of fiduciary duty against the Celotex Asbestos Settlement Trust and the Trustees of the Trust. As shown above, the Trust and the Trustees have been released and discharged from all claims relating to the operations of the Trust, except those claims that were specifically preserved pursuant to certain Orders approving the Annual Reports. The preserved claims were expressly limited to "the rights of persons who held asbestos property damage ('PD') claims that had been allowed by the property Damage Claims Administrator but that the Trust had not promptly paid (the 'Disputed PD Claims.')." (Main Case Doc. 13992, p. 3).

Wesleyan may not assert any rights related to Disputed PD Claims as the class representative of the National Universities Class Action.

## A. The conditional class certification does not extend to this proceeding.

■ First, the class in the National Universities Class Action was only conditionally certified for purposes of discovery on eight specific issues involving the merits of the universities' underlying asbestos claims. *Central Wesleyan College v. W.R. Grace & Co., et al.*, 143 F.R.D. 628 (D.S.C. 1992), *aff'd* 6 F.3d 177 (4th Cir.1993). The record does not show that the class was ever unqualifiedly certified, or that it was ever certified for any other purpose.

This Court authorized the filing of the National Universities Class Action claim based on the conditional certification allowed in 1993 when the Bar Date Order was entered. The conditional class certification, however, does not extend to pursuit of the breach of fiduciary duty claims in this proceeding. See *In re Ross*, 37 B.R. 656, 658 (9th Cir.BAP1984)(The creation of a class relates solely to a single litigation event, and not to different causes of action in separate litigation.). A District Court's reasons for certifying a class in a prior action, for example, do not necessarily apply to certification of the class in a subsequent bankruptcy proceeding based on a different cause of action. *In re Livaditis*, 122 B.R. 330, 341 (Bankr.N.D.Ill.1990).

In this case, the breach of trust claim is the sole cause of action preserved by the Court's prior Orders for assertion against the Trust and Trustees. The cause of action is based on the Trust's failure to promptly pay Asbestos Property Damage Claims that had been allowed by the PDCA. The breach of trust claim is factually and legally different from the eight issues defined by the District Court for Phase One proceedings in 1992, before the

Celotex Asbestos Settlement Trust was even created. See also *In re W.R. Grace & Co.*, 316 Fed.Appx. 134, 136 (3d Cir. 2009)(An attorney's authority to act on behalf of a class in a separate, nonbankruptcy class action does not automatically mean that the attorney is authorized to act on behalf of an individual in a bankruptcy case.).

Additionally, the Court in the National Universities Class Action expressly deferred ruling on Wesleyan's standing to pursue the underlying asbestos claims as class representative. The record in this case does not show that Wesleyan was ever authorized to serve as class representative for the conditionally-certified class in that action.

### B. Wesleyan did not file the Property Damage Claim as class representative.

Second, the Property Damage Claim of the National Universities Class Action was not filed by Wesleyan, as the "class representative," in the Celotex Chapter 11 case. Although the Bankruptcy Court authorized the filing of a class claim on behalf of the National Universities Class Action, Wesleyan was never recognized by the Court as the "class representative" designated to assert the claim. The Bar Date Order and Notice of the Bar Date refer only to the filing of the class claim by a "class representative." No specific class member was ever named or approved to serve as the "class representative" permitted to prosecute the claim.

Further, the identity of the creditor named on the Asbestos Property Damage Proof of Claim is "National Universities Class Action." The Claim does not establish that it was filed by Wesleyan as the class representative for the National Universities Class Action claimants. Consistent with the Claim, the Notices of Final Determination identify the Claimant as the National Universities Class Action, the Notices were accepted by the attorney who filed the claim as "claimant representative," and the settlement checks were issued to the attorney with notations referring to the National Universities Class Action. Wesleyan does not appear on any of the documents as the class representative for the National Universities Class Action claimants.

### C. Wesleyan has not shown that it holds a Disputed PD Claim.

Third, Wesleyan cannot represent the National Universities Class Action class in this Chapter 11 case, because it has not shown that it holds a property damage claim, in its individual capacity, against Celotex or Carey Canada.

Rule 23(a) of the Federal Rules of Civil Procedure sets forth the prerequisites for the members of a class to sue or be sued as representative parties on behalf of all members of the class. To qualify for such representative authority, Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). For purposes of this requirement, it is generally held that class representatives must possess "the same interests and suffer the same injuries as the proposed class." *San Antonio Hispanic Police Officers' Organization, Inc., v. City of San Antonio*, 188 F.R.D. 433, 443 (W.D.Tex.1999). A class representative must be part of the class and "possess the same interest and suffer the same injury" as the class members. *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) (citations omitted). See also *O'Connor v. Boeing North American, Inc.*, 180 F.R.D. 359, 373 (C.D.Cal.1997).

In this case, the Asbestos Property Damage Claim filed by the National Uni-

versities Class Action was processed according to specific buildings owned by the class members. Nothing in the record, either by way of Notices of Final Determination, settlement checks, or correspondence from the Property Damage Facility, establishes that Wesleyan was the owner of a building in which Celotex ACM was found. Wesleyan does not possess the same interest as members of the National Universities Class Action with Disputed PD Claims, and cannot represent the class members in this breach of trust action.

Accordingly:

**IT IS ORDERED** that:

1. The Motion to Dismiss the First Amended and Restated Complaint, filed by the Celotex Asbestos Settlement Trust and its Trustees, Frank Andrews, Sharon M. Meadows, and James W. Stevens, is granted as set forth in this Order.

2. The First Amended and Restated Complaint is dismissed, without prejudice to the right of the Plaintiffs to file a further Amended Complaint within twenty (20) days of the date of this Order.